On August 19, 1977, appellant-defendant was indicted for the alleged sale of "a quantity of amobarbital, cocaine hydrochloride, methaqualone, meperidine hydrochloride, phendimetraxine, secobarbital, hydromophone, methamphetamine, dextroamphetamine, methlyphenidate, diethylpropion, controlled substances, to another, contrary to and in violation of Act No. 1407, Art. IV, Section 401 (a), of the 1971 Regular Session of the Alabama Legislature, otherwise known as the Uniform Alabama Controlled Substances Act." He was arraigned and pleaded not guilty on September 2, 1977. His trial commenced on September 27 and was concluded on September 28, 1977. The jury found him guilty and fixed punishment at a fine of $18,000. On October 6, 1977, he was sentenced to imprisonment for twelve years.
All of the witnesses testifying in the case were presented by the State. At the conclusion of the State's case, defendant rested without testifying himself and without presenting any witness in his behalf.
A well-planned purchase of a quantity of controlled substances had been arranged by the Gadsden City Police for the late afternoon of August 13, 1977. The site therefor and other details were arranged for its purchase from one Howard Dickerson for the sum of $3,300. The sum of money stated had been obtained for the purpose and photographed.
Officer J.W. Gulledge, accompanied by a confidential informant, drove to the scene with the money and parked beside a gold Chevelle automobile. The informant got out of the car driven by Officer Gulledge and entered the Chevelle. Dickerson approached the Gulledge automobile on foot and sat inside that car for a few moments. Gulledge showed Dickerson $3,300; then Gulledge received a signal from the informant and handed Dickerson the money, who promptly left the scene. The informant got out of the Chevelle with a brown paper bag and its contents in his possession.
In the Chevelle automobile from which the informant obtained the brown paper bag and its contents were two white males, including appellant-defendant and Darrell Phillips, the apparent driver of the vehicle. *Page 1062 
McElroy and Phillips were arrested on the scene by other officers and were promptly taken into custody. Howard Dickerson was also arrested and the identical $3,300 that had been handed him by Officer Gulledge was recovered from his possession.
It was beginning to get dark when the incident stated occurred and there was a heavy rain at the time.
There was evidence presented by the State to show that several of the items of alleged controlled substances were in the paper bag.
Although the circumstances as to exactly what took place as between the informer and the two persons in the Chevelle automobile are not shown with the most desirable clarity possible, we must conclude that the evidence is sufficient upon which to base the finding that one of the persons in the Chevelle automobile at the time sold and delivered to the informer controlled substances in consideration of the sum of $3,300 handed Dickerson by Officer Gulledge. Appellant makes much of the point that it is not conclusively shown whether the sack of substances was obtained from appellant or from the other person in the Chevelle automobile.
We see little basis for any assumption that the two persons in the Chevelle automobile were not working in concert with each other. There was ample evidence that each aided or abetted the other and was thereby guilty as principal, whether he was the more active or the principal offender or not. Code of Alabama 1940, Recomp. 1958, Tit. 14, § 14. Patterson v. State,234 Ala. 242, 175 So. 371; Stokley v. State, 254 Ala. 534,49 So.2d 284.
The participation in a crime and the community of purpose of the perpetrators need not be proved by direct or positive testimony, but may be inferred from circumstantial evidence.Stokley v. State, supra; Parsons v. State, 33 Ala. App. 309,33 So.2d 164.
Appellant complains that the trial court improperly allowed evidence of defendant's having a sawed-off shotgun while in the Chevelle automobile and his holding it while he was getting out of the automobile. He says that such evidence constitutes that of the commission of another crime and for that reason is inadmissible. The fact that the possession of a sawed-off shotgun does or does not constitute the commission of a crime has nothing to do with the question of the admissibility of the evidence under the circumstances here presented. It was one of the actual acts taking place during the commission of the crime charged.
 "Evidence of other and distinct criminal offenses, at other times and places, is admitted in evidence only in exceptional cases and for limited purposes.
. . . . .
 "But this case is governed by another and different principle. Everything constituting the one continuous transaction is admissible as of the res gestae. No matter how many distinct crimes may be involved, all the details of the one continuous criminal occurrence or adventure may be considered by the jury in passing upon the culpability, the wickedness and depravity of the crime for which the party is being tried. . . ." Jackson v. State, 229 Ala. 48, 155 So. 581 (1934)
Appellant urges that there is a variance between the indictment and the evidence by reason of the fact that the indictment does not specify all of the controlled substances that the evidence shows were in the paper bag and further that the evidence does not show that every controlled substance specified in the indictment was in the paper bag. This does not constitute a fatal variance. In Parks v. State, 46 Ala. App. 722, 248 So.2d 761, 762, we held:
 "The indictment charged the appellant with unlawful possession of one bottle containing opium alkaloid; twenty ampules containing isonitecaine, and one hundred tablets containing morphine. The appellant contends that there is a fatal variance as the state failed to prove the appellant's possession of the exact *Page 1063 
quantity of narcotics as alleged in the indictment. Such is not a variance. It is sufficient to prove only so much of an indictment as shows that the accused has committed a substantial offense specified therein. Fuller v. State, 39 Ala. App. 219, 96 So.2d 829; Blakeney v. State, 244 Ala. 262, 13 So.2d 430."
During the cross-examination of Officer Gulledge, the following occurred:
 "Q Now, in the car with you, that was Phillip Patterson, is that correct?
"A It was a confidential police informant.
"Q Was it Phillip Patterson?
"MR. CARNES: We object, Your Honor.
 "Q Judge, this man is a witness to the crime. Now, before we were talking about someone who set up something, allegedly set up something. Here, we are talking about a specific witness to an alleged crime.
"THE COURT: What was the question?
 "Q I asked him if it was Phillip Patterson that was in the car with Officer Gulledge here.
"THE COURT: And you —
"MR. CARNES: I object to it.
"THE COURT: Sustained.
 "Q This confidential informant, is he in the courthouse here today?
"A No, sir, he is not.
"Q Okay, he is not going to testify today —
"A No, sir.
 "Q — that you know of? You never got out of the car, is that correct?
"A That is correct, I never moved."
On redirect examination of the witness, the following occurred:
 "Q Officer Gulledge, Mr. Allenstein asked you about the confidential informant and where he is, or if he is here in the courthouse. Do you know where he is?
"A No, I do not.
"Q All right.
"A I believe he may be out of the state.
"Q Have you seen him in some time?
"A Sir?
"Q Have you seen the informant lately?
"A No, sir, I have not.
"Q I believe that's all."
Immediately thereafter, the following occurred:
"RECROSS EXAMINATION BY MR. ALLENSTEIN:
 "Q Do you know anything about a Peggy Henderson or a person named Salvador? Do you know anything about them being —
 "A I understand they were arrested at the time along with these other persons.
 "Q Do you know where [sic] they were involved in all of this?
"A No, sir, I don't.
"Q You just heard they were arrested?
"A Yes, sir.
"Q Have charges been filed against them, if you know?
"MR. CARNES: We object.
"A I believe they were —
"MR. CARNES: We object.
"THE COURT: I sustain.
"Q Okay. I believe that's all I have.
"(Witness excused)
"MR. ALLENSTEIN: May I approach the bench?
 "(Whereupon, a discussion was had outside of the hearing of the jury, during which the following occurred)
 "MR. ALLENSTEIN: Judge, it appears from the evidence that the confidential informant actually made the
 purchase, and he is the only person that has personal knowledge that it actually occurred. Therefore, we move that we be furnished with the name of that informant.
"THE COURT: I'm going to deny that.
 "MR. ALLENSTEIN: I just want to get it on the record that we do request the name of that informant, and even a continuance, if necessary, to secure his attendance here at this trial.
 "THE COURT: I'm not going to allow you to put him on or to find out about him.
"MR. ALLENSTEIN: I understand. We except. *Page 1064 
 "MR. CARNES: It is our understanding that he is out of state."
In Davenport v. State, 50 Ala. App. 321, 278 So.2d 769, 772, we held:
 "The general rule that the identity of an informer is privileged and may not be revealed, does not apply in the present set of facts, where the informer, at the instigation, and in the presence of the officer, was an active participant with the accused at the commission of the offense. Authorities, supra.
 "We find no other error injurious to the substantial rights of the appellant.
 "But the case must be reversed on account of the refusal of the court to admit cross-examination as to the identity of the informer."
To the same effect and result is Davis v. State, 51 Ala. App. 532, 287 So.2d 243 (1973). In Kenny v. State, 51 Ala. App. 35,282 So.2d 387, cert. denied, 291 Ala. 786, 282 So.2d 392
(1973), the principle is also declared, but no prejudicial error occurred as defense counsel "on a hunch" called the informer as a witness. In Kilgore v. State, 50 Ala. App. 501,280 So.2d 206 (1973), the court, in holding that the informer therein was not an active participant, said:
 ". . . The fundamental requirements of fairness compel disclosure in such cases where the informer plays a major and active part in bringing about the sale of narcotics and continues an active participant therein . . ."
In support of its position that the cited action of the trial court does not constitute reversible error, appellee relies upon Johnson v. State, 54 Ala. App. 187, 306 So.2d 55, cert. denied, 293 Ala. 760, 306 So.2d 56, cert. denied,95 S.Ct. 1998, 421 U.S. 990, 95 S.Ct. 1996, 44 L.Ed.2d 481, in which it was held that the state is under no duty to ascertain the whereabouts of the informer and advise the defendant thereof and that a denial of defendant's motion for a mistrial or interruption of the trial for a short time to seek the informer was not error.
Appellee also relies upon an additional conclusion reached inJohnson v. State, in contending that defendant's counsel knew the name of the informer and has no valid complaint arising from the court's sustention of the State's objection to defendant's question to Officer Gulledge as to the name of the informer. Appellee directs attention to a question that had been asked Captain Bowman, the first witness for the State, and his answer as follows:
"Q Who was in the car with Officer Gulledge?
 "A Who was in the car with him? Phillip Patterson."
The question just quoted was asked by defendant's counsel on cross-examination of Captain Bowman. The interrogation and answers continued as follows:
 "Q Okay. And, of course, you weren't present to see what transpired while they were in the parking lot.
"A No, sir, I was not.
 "Q Okay. Then, you say Officer Gulledge and Phillip Patterson left the scene in their car? Left the scene of the purchase, is that correct?
"A They left the scene.
 "Q Then, about how much time lapsed from the time they left the scene until you got there?
"A Approximately thirty to forty-five seconds.
 "Q Okay. And you were the first car on the scene, is that right?
"A That is correct, yes, sir."
Captain Bowman, the record shows, was testifying in some respects as to what he saw. However, he testified largely as to what he heard via the "intelligence" communications passing through a network of walkie-talkies, operating on a private channel, among the law enforcement personnel as they made and executed arrangements for the purchase of the narcotics. Captain Bowman did not see the man in the automobile with Officer Gulledge at the time the transaction was consummated, or at any time while that automobile was at the scene of the crime.
We are not convinced that the testimony of Captain Bowman was sufficient to establish beyond question that Phillip Patterson *Page 1065 
was the man, to the preclusion of further inquiry by defendant as to who the man was.
Appellee further argues that knowledge by defendant's counsel of the name of the informer is also indicated by his question addressed to Officer Gulledge: "Now, in the car with you, that was Phillip Patterson, is that correct?"
Although there is some basis for appellee's argument that defendant's attorney knew the name of the informer, it does not seem that such was the basis for the trial court's ruling as to the identity of the informer. If it were clear to all concerned that it had been definitely established that Phillip Patterson was the informer, it is difficult to understand the continued insistence by defendant's attorney that the identity of the informer be disclosed, the continued objection by the State that it not be disclosed, and the action of the court in sustaining the State's objection to the action of defendant's counsel in attempting to show or determine the identity of the informer.
In the defendant's argument in support of the motion to exclude the evidence, which the court overruled, counsel said,inter alia:
 "In addition to my motion to exclude the evidence on those I would also like to renew my motion for the State to produce the name and address of this informer, and we ask that if they would do that we would need a continuance to secure his attendance here at trial. This came as a surprise. We thought that the person who bought the drugs would be present at trial."
In response to the quoted statement of defendant's counsel, counsel for the State said:
 ". . . I think that the evidence shows through Captain Bowman, the first witness, that the person who was out there with Officer Gulledge was a man named Phillip Patterson. And for the record, I want to make it known to the court that we do not know where Mr. Phillip Patterson is. I asked one of the officers if he knew and he said no. It is our information that he has left the State. But, his address is unknown to us. I have talked with all of the officers in one room, several of them, at least, and asked if they knew where he was. Frankly, I would like to have him here. We don't have him, and don't know where to find him. I don't think there was anyone else out there in the car. All the evidence shows is there were two people. And Captain Bowman testified that the other man was Phillip Patterson."
Thereafter, the court announced that it was overruling all motions of defendant made at the conclusion of the State's case, and defendant rested.
There are similarities between the facts in this case and the facts in Johnson v. State, supra, relied upon by appellee, but there also are significant dissimilarities. In Johnson, defendant knew the first name of the informer and had known him for about sixty days prior to the alleged sale in that case. He knew where the informer was working, and about two days after defendant was arrested, "he had an occasion to check where Howard [the informer] was working, and he was not there . . . . that he stopped a few times thereafter but never found him." The defendant in Johnson gave such information to his attorney. We said in Johnson:
 "The state was under no duty to ascertain the whereabouts of the informer, Howard, and advise the defendant. Diligence in finding him was addressed to the defendant. Thigpen v. State, 49 Ala. App. 233, 270 So.2d 666 (4)." 306 So.2d 55, 56.
There is nothing to indicate in the case before us that either defendant or his attorney knew the name of the informer, or had any information whatever as to his name, until his name was called by Captain Bowman in his testimony as a witness for the State.
The fact that Captain Bowman had testified that the informer was Phillip Patterson did not impair defendant's right to *Page 1066 
cross-examine the most vital witness in the case against defendant, Officer Gulledge, as to the name of the informer. Although denied that right, defendant continued, without success, to press for the name and further identification of the informer to the completion of the evidence in the case.
There is nothing in the record to indicate that the action of defendant's counsel in attempting to find out more about the informer and to obtain time, if necessary, to find out more about him and have him in court, if possible, smacked of a delaying tactic. Defendant and his counsel met the requirements of dispatch. There was no lack of cooperation on the part of either. Their entry without remonstrance or objection into the trial of the case on September 27, 1977, less than five weeks after the indictment was returned (September 2, 1977), and approximately six weeks from the time of the alleged crime (August 24, 1977) could at the most be said to have been an error of judgment. Their defense as a whole refutes any charge of cognizable dilatoriness.
A mere error of judgment in the light of hindsight only is not sufficient to support a conclusion of a lack of diligence. Defendant knew, defendant's attorney knew, and in fact, all of the witnesses knew that the person whose identity defendant's attorney was attempting to establish was the only person who came to the automobile in which defendant and another were sitting and from which the bag of controlled substances was obtained — the only person, other than appellant and his companion who had the constitutional right to remain silent, who actually witnessed what took place in the automobile at the time, particularly any and all inculpatory or exculpatory remarks or conduct of appellant. We think his being called as a witness for the prosecution was reasonably expectable.
Although we have heretofore held herein that by the circumstances stated sufficient evidence was presented to support a guilty verdict, we cannot say that better evidence would not have been the testimony of the man who apparently obtained the bag of controlled substances from the automobile in which the defendant and the other man were sitting. His testimony, if credible, would have been more direct as to the guilt or innocence of defendant than the circumstances relied upon by the State, and which we have held sufficient, to support a conviction. As a trustworthy witness, he would have been a pillar of light to the jury in its quest for truth, in a case which otherwise is somewhat hazy, if not densely cloudy.
Resourceful counsel for the State were able to win the case without using the particular witness, which of itself was a noteworthy achievement, but the circumstances as a whole are insufficient, we think, to cause defendant's counsel to believe before trial that such course of action would be pursued by the prosecution.
We are unable to find fault with defendant's counsel in his being surprised, as he stated, that the State did not use such witness or in thinking, as he said, "that the person who bought the drugs would be present at trial."
We cannot say that defendant's counsel should have done more than he did on the trial to obtain more information about the identity of the informer or to urge that court to grant him time to locate the informer, in the light of the positive statement of the court:
 "I'm not going to allow you to put him on or to find out about him.",
to which defendant's counsel responded:
"I understand. We except."
The emphatic ruling of the court just quoted is not in the pale of rulings denying requests for a continuance or suspension of the trial, as to which the trial court's discretion is so broad as to prevent a finding of reversible error on appeal. The reason for such broad discretion is that generally a ruling on a motion for continuance requires a process of balancing and counterbalancing of many factors, pro and con, for which the trial court is often at a better vantage point than the reviewing court to arrive at a just conclusion. Here, however, the trial court based its conclusion unreservedly and exclusively *Page 1067 
upon the conviction that defendant was not entitled to "put him [the informer] on or to find out about him." From this it seems that, if the informer could have been better identified and located even that day, during the noon recess of the trial, or that evening or night, and the trial suspended only until the following day, no such opportunity was afforded defendant. The court obviously was not attempting to weigh the considerations that ordinarily enter into the process of determining whether a continuance or delay should be granted for the purpose of finding out more about the informer. With commendable forthrightness, it decided and ruled that defendant was not entitled to use the informer as a witness or to find out about him, that is, if the informer could have been located and brought to court without unreasonable interference with the progress of the trial, it would have profited defendant nothing — he could not have "put him [the informer] on" or "find out about him."
We hold that the action of the court was such as to deny to defendant his right to such information as to the identity of the informer as to enable his counsel to defend him adequately. To hold otherwise would not be in harmony with our decisions inDavis v. State, supra; Kenny v. State, supra; Kilgore v. State, supra, and Davenport v. State, supra.
The importance of preserving the "informer privilege," or the law enforcement authorities' privilege, of withholding from disclosure is not to be treated lightly, but it does not rise above the importance of affording a fair trial to litigants.
 ". . . Where the disclosure of an informer's identity, or of the contents of his communication, is relevant to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. . . ." Roviaro v. United States, 353 U.S. 53, 60, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957)
In the case under review, the informer was not only "an active participant with the accused at the commission of the offense," but he was the "only" active participant with the accused and the companion of accused at the commission of the offense.
For the error indicated, the judgment of the trial court should be reversed and the cause remanded for another trial in accordance with this opinion.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.