494 So.2d 777 (1985)
Curtis ALLEN
v.
STATE.
1 Div. 939.
Court of Criminal Appeals of Alabama.
December 10, 1985.
On Return to Remand July 15, 1986.
Rehearing Denied August 12, 1986.
*778 T. Jefferson Deen, III, Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and Alice Ann Boswell, Asst. Atty. Gen., for appellee.
McMILLAN, Judge.
From a conviction for the offense of unlawful possession of a controlled substance, in violation of § 20-2-70, Code of Alabama (1975), this appeal follows. For the reasons outlined below, this case is remanded, with directions that the trial court hold an evidentiary hearing on the appellant's motion for a new trial.
On January 19, 1984, Officer Ervin Pinson and Officer Claude Monigan, Narcotics Division, Mobile Police Department, witnessed the appellant as he allegedly sold a controlled substance to a person who was with the officers' confidential informant. Based on the information they had obtained and verified by their own observations, the police officers approached the appellant, detained him and "patted him down." When they did not find any contraband, the officers asked the appellant to unzip his pants for a more complete search. The appellant refused to remove his pants in public, but agreed to get inside the police car for the search. The appellant got into the police car and unzipped his pants. One of the officers then stated that the appellant "went into his crotch area and when he came out, he had a hand full of pills that he threw in his mouth." After a struggle, the police officers recovered four pills which were identified at trial as the controlled substance "hydromorphone." After a trial by jury, the appellant was convicted of the offense of possession of a controlled substance and this appeal follows. Appellant raises four issues.

I
The first issue concerns the refusal of the trial court to allow the appellant to determine the identity of the person who accompanied the "confidential informant" (as opposed to the identity of the *779 informant), at the time that the alleged drug buy took place. During the trial of the case, defense counsel moved to suppress certain evidence which was offered by the State. Out of the presence of the jury, the following testimony was presented to the trial court.
Officer Ervin Pinson testified that he had received some information from a "reliable informant" whom he had known for approximately two months. According to Officer Pinson, the information which the informant had previously provided had proven to be reliable. The informant, a black female, told Officer Pinson that she, along with a female companion, was on her way to purchase drugs at a specific address. The informant gave Officer Pinson a general description of the person, subsequently identified as the appellant, from whom she planned to purchase the drugs.
Officer Pinson, along with Officer Monigan, arrived at the stated location and observed the informant, along with another black female, drive up. The "subject" (who was later identified as the appellant) approached the informant's car, got inside, and remained there for approximately two minutes. The appellant then left the car, and the informant drove away.
The informant drove up alongside the police officers and told them that the appellant had just "transacted the dope deal with her companion." The informant also stated that the appellant still had certain contraband on his person, which she identified as "D's, dilaudid."
Officer Pinson and Officer Monigan approached the appellant. They performed a "quick pat down," but did not find anything. Officer Pinson then asked the appellant to "unzip his pants so I could check in his crotch area," but the appellant refused. According to Officer Pinson, the appellant was reluctant to unzip his trousers while "standing on the corner." At the appellant's request, he was allowed to get into the police officer's car for the search.
At this point, according to Officer Pinson, the appellant "went into his crotch area. And when he came out, he had a hand full of pills that he threw in his mouth." Because Officer Pinson assumed that the appellant was trying to swallow the pills, a struggle began. After the appellant was subdued, four or five pills were discovered in the back of the police car. The appellant was then placed under arrest. The pills were recovered and turned into the police lab for analysis.
Defense counsel was able to establish that the confidential informant was receiving favorable treatment in connection with certain "narcotics related cases" which were presently pending against her. According to Officer Pinson, certain charges against the informant were either "dropped or reduced." Additionally, other charges against "her kids" were "dropped." As defense counsel continued his examination of Officer Pinson during the motion to suppress, he attempted to verify the name of the informant and her companion in the following manner:
"[Mr. Deen]: And you're sitting there watching. Was [the informant] driving or was she the passenger?
"A She was driving the vehicle.
"Q Okay. And this is Carolyn Davis we're talking about?
"THE COURT: You don't have to answer that.
"MR. DEEN: Judge, I think it goes to the good faith. I can't ask him who it was, but I can ask him if it was a specific person under the rules, the new rules.
"THE COURT: You don't have to answer that.
"Q Was the other person in the car Ida Mae Jessie?
"THE COURT: He [doesn't] have to answer that.
"MR. DEEN: That's not the informant, Judge.
"THE COURT: She wasn't a witness.
"MR. DEEN: They're a witness to something going on. They're a witness right there on what went on. There's been no objection.
"THE COURT: To what?

*780 "MR. DEEN: I can ask him who the other person in the car was.
"THE COURT: You can ask him. I'm telling him he doesn't have to testify to it.
"MR. DEEN: We except and will make a showing later, if it please the court, as to the ruling.
"THE COURT: All right."
In addition to Officer Pinson, Officer Monigan also testified during the hearing on the motion to suppress, outside the presence of the jury.
Officer Claude Monigan testified that he had previously worked on "numerous occasions" with this particular "reliable informant." According to Officer Monigan, he received a call from the confidential informant, who told him that "the subject Curtis Allen was on Davis Avenue around the Congo Club and had some drugs on him." Although the confidential informant had some cases pending against her at the time, the charges were subsequently dropped. Officer Monigan stated that he, along with Officer Pinson, went to the stated location and observed the transaction from their parked car.
According to Officer Monigan, a black male got into the informant's car and remained there for approximately ten minutes. When the black male got out of the car, the officers went around the corner and discussed the transaction with the informant. The two officers then approached the appellant and conducted a search of his person.
Prior to the time that the jury was called back into the courtroom, defense counsel argued that the motion to suppress should be granted because the warrantless search of the appellant was improper. Additionally, defense counsel argued that the identity of the confidential informant, as well as her companion, should be revealed because the informant was a "material witness." The trial court denied the motion.
After the trial court denied the motion to suppress, the jury was recalled and testimony was presented from Officer Pinson and Officer Monigan. Their testimony was, in essence, the same as that presented at the motion to suppress, with one significant difference. During the cross-examination of Officer Monigan, the identity of the informant's companion was established in the following manner:
"[Defense counsel]: All right. Was [the informant] with anybody then?
"A [Officer Monigan]: Yes, she was.
"Q Who was she with?
"A I can't remember the name.
"Q Have you ever seen her before?
"A I've seen her a bunch of times.
"Q Well, does the name Ida Mae Jessie sound familiar to you?
"[Assistant District Attorney]: Your honor, that's irrelevant. It doesn't matter who it was. We object.
"THE COURT: Overruled.
"Q Was it Ida Mae Jessie?
"THE COURT: If you know.
"THE WITNESS: If I know?
"THE COURT: Yes.
"A Yes, it was."
Officer Monigan also stated that Ida Mae Jessie was driving the car. For reasons which are not clear from the record, Officer Monigan subsequently testified that Ida Mae Jessie was the informant, and not the "companion." When asked if the name of the "other person" was "Carolyn Davis," Officer Monigan stated: "All I know is Carolyn. I don't know her last name." Defense counsel, at this point, did not press further in his attempt to determine the names of the informant and her companion, and did not request a continuance so that either Jessie or Davis, or both, could be called to testify on behalf of the appellant.
The appellant has cited no cases which support his position that he was entitled to determine the identity of the informant's companion. Instead, the appellant relies on case law dealing with whether the accused is entitled to know the identity of a confidential informant who actively participates in the illegal activity. In particular, the appellant cites McElroy v. State, 360 So.2d 1060 (Ala.Cr.App.), cert. denied, 360 So.2d 1067 (Ala.1978). In McElroy, the appellant's *781 conviction for the offense of sale of a controlled substance was reversed. The reversal was based upon the trial court's refusal to grant the defense attorney a continuance so that he could determine the whereabouts of the confidential informant and possibly subpoena him for trial. In concluding that reversible error existed in the McElroy case, this court stated as follows:
"The general rule that the identity of an informer is privileged and may not be revealed, does not apply in the present set of facts, where the informer, at the instigation, and in the presence of the officer, was an active participant with the accused at the commission of the offense." Id. at 1064. Quoting Davenport v. State, 50 Ala.App. 321, 278 So.2d 769, 722 (1973).
McElroy, however, is distinguishable from the present case based on the following factors:
1. The appellant in McElroy was convicted of the offense of sale of a controlled substance. In the present case, the conviction is for mere possession of a controlled substance.
2. In McElroy, the police officer not only gave the informant the money to buy the drugs, but also accompanied the informant to the place where the sale took place. In the present case, neither the informant nor the companion took part in the "illegal activity"; i.e., "possession."
3. During the trial of the case the defense attorney in McElroy sought to determine not only the name of the informant, but also a "continuance, if necessary, to secure his attendance here at this trial." Id. at 1063. In the present case, defense counsel did not ask for a continuance and did not ask permission to subpoena the informant or her companion.
4. The defense counsel in McElroy did not know the name of the confidential informant until the day of trial. In the present case, it is apparent that defense counsel knew the names of the companion, as well as the informant, prior to trial, but did not subpoena them or ask for a continuance once their identity was verified.
The present case can also be distinguished from McElroy because the informer in McElroy was "not only `an active participant with the accused at the commission of the offense,' but he was the `only' active participant with the accused and the companion of the accused at the commission of the offense." Id., at 1067. As the State points out in its brief, "the confidential informant, in this case, was not an active participant or witness in regard to the transaction which served as the basis of the appellant's prosecutionpossession of controlled substances." As a general rule, the accused is not entitled to know the name of the confidential informer unless the informer was a "material witness", that is, "an active participant in the illegal transaction which leads to the charges brought against the accused." Self v. State, 420 So.2d 798, 800 (Ala.1982), citing Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).
In a recent case, this court, per Judge Tyson, upheld a conviction for the unlawful possession of marijuana and noted that it was unnecessary for the trial court to order that the identity of the confidential informant be revealed. White v. State, 479 So.2d 1368 (Ala.Cr.App.1985). In reaching this conclusion, this court noted that: (1) "The appellant never raised the issue of entrapment;" (2) "[The informant] was not an active participant or even an eye-witness to the crime;" and (3) "[The confidential informant's] testimony was not crucial or even material to the issue of the appellant's guilt or innocence." Id. This court also stated as follows:
"Therefore, we hold that since it was unnecessary for Collier's [the confidential informant] identity to be revealed, the appellant's right to confront and cross-examine him was not abridged.
"Furthermore, the appellant contends that he had no opportunity to investigate and subpoena Collier because his identity *782 was revealed so late during the course of the trial. We find no merit to this argument.
"The appellant could have asked for a continuance so that he could locate Collier, interview him and perhaps subpoena him. Any prejudice suffered by the appellant could have been eliminated by this course of action. United States v. Burkhalter, 735 F.2d 1327 (11th Cir. 1984). Moreover, `[t]he failure to ask for compulsory process is a waiver of it.' Thornton [v. State] supra, [390 So.2d 1093] at 1098." Id.

In the present case, as in the White case, the issue of entrapment was never raised;[1] the informant's companion was neither an eyewitness nor an active participant in the crime; and it is not apparent that the testimony of the companion was crucial or material to the defense. For these reasons, the appellant was not entitled to know the identity of either the informant or her companion.
Even if the companion, in the present case, could be considered an "informant," as a result of her mere presence, it is not apparent that her identity must be revealed. Where an informant merely supplies information to police officers to establish "probable cause" for a search, and does not participate in the subsequent criminal activity, it has been held that the defendant would not be entitled to learn the identity of the informant. Gilliland v. State, 466 So.2d 151 (Ala.Cr.App.1984). In Gilliland, this court, per the Honorable Leigh M. Clark, Retired Circuit Judge, stated as follows:
"`The informer in this case merely supplied information to the law enforcement officer to establish probable cause for a search of the appellant's residence. [Citation omitted.] The burden was on the accused to show why the disclosure of the informant was necessary to show his innocence. Hatton v. State, Ala.Cr.App., 359 So.2d 822, cert. quashed, Ala. 359 So.2d 832 (1978). The appellant, through his own testimony before the jury, was allowed to develop his defense that he though Willie Hardin was the informant and that Willie Hardin planted the drugs in his residence. The appellant testified that he saw Willie Hardin often, and he had last seen him five days before his trial. He had also told his attorney about Willie Hardin. The similarity between this case and Hatton ends there.
"`The appellant's contention that he was denied the right to confront Willie Hardin (the alleged informant) under oath has no merit. In Hatton the suspected informant was actually called as a witness but the trial court restricted his testimony. However, in the instant case, the appellant failed to ask for compulsory process for the witness. The failure to ask for compulsory process is a waiver of it. [Citations omitted.]'" Id. at 156-57, Quoting Thornton v. State, 390 So.2d 1093, 1097-98 (Ala.Cr.App.1980), cert. denied, 390 So.2d 1098 (Ala.1980).
Thus, even assuming that the companion's identity was discoverable, under the authority of Gilliland, there was no reversible error. Additionally, here, as in Gilliland, the appellant "failed to ask for compulsory process" for these witness.

II
The second issue raised on appeal is stated as follows: "The court erred in denying the motion of the defendant to suppress the evidence allegedly discovered by police officers on his person at the time of his arrest." According to the appellant, *783 the police officers made "absolutely no verification of the information supplied by the informer before searching appellant." In support of his position, the appellant cites the Louisiana case of State v. Ruffin, 448 So.2d 1274 (La.1984). In Ruffin, however, the police officers failed to corroborate the information which they received from their informant. Under the "totality of the circumstances" test, the Louisiana Court concluded that there was insufficient "probable cause" for the arrest, based merely upon the information supplied by the informant. For this reason, Ruffin's conviction was reversed.
In the present case, the police officers testified that they had successfully used this informant on several occasions in the past and found that the information which she provided was extremely reliable. The police officers then verified the information by observing the transaction and establishing that the information provided by the informant was accurate. Because the information previously supplied by the informant had been reliable, and the information in the present case was corroborated by the police officers' own observations, it is apparent that sufficient "probable cause" was established for the search. Thus, the motion to suppress was properly denied.

III
The final issue presented by the appellant concerns the trial court's denial of his motion for new trial. Appellant claims that he was entitled to a new trial as a result of certain "extraneous matters" which were considered by the jurors in making their decision. Appellant also submits that he was entitled to present, at the hearing on the motion for new trial, testimony from subpoenaed jurors. This testimony, according to the appellant, would have established that evidence other than that presented at trial was considered by the jurors.
The alleged "extraneous matters" possibly considered by the jurors concerned an experiment conducted by one of the jurors at home. Evidently, the juror wished to verify certain testimony presented by the state toxicologist. During the course of the trial, Sylvia Bryant, Toxicologist, Mobile Police Department Crime Lab, testified. On direct examination, Ms. Bryant testified that she examined the pills which were found in the police officers' car and determined that they were, in fact, controlled substances. Ms. Bryant also testified, on cross-examination, as follows:
"[Defense counsel]: What is the solubility of these pills?
"A They're very soluble in organic solvents such as chloroform. That's why we extract
"Q What does solubility mean?
"A How quickly the substance will dissolve and go into solution.
"Q Melt?
"A No. You're talking about melting point there.
"Q That's something different?
"A Slightly. It melts in a sense because it does disintegrate.
"Q It won't melt in your hand, not in your mouth?
"A Yeah. It will melt in your mouth.
"Q Okay. Will it melt pretty quick?
"A With saliva, yes, being slightly acidic, it will melt.
"Q Okay. Now, these pills marked with the "K-2" on them, would that have melted off a little bit had it been in somebody's mouth, in your opinion?
"A In my opinion, if it had been in your mouth, yes, you would probably seeI'm sure you would see some difference, but very small, very easy to swallow. And may I see one and check and see if it's a film tab.
"Q Yes.
"A It's not the film tab. If you notice, the jurors may know that some of your pills have a very shiney coating, which is called a film tab. It's slower to melt.
"Q Yes, ma'am.
"A But this type, like aspirin, you know, you put an aspirin in your mouth and you don't swallow it fast it begins to melt in your mouth.

*784 "Q Starts dissolving?
"A (Witness nods head affirmatively.)
"A Does this pill or any of these other three that are up here look like they've been exposed to saliva?
"A No, sir, not at the time I saw them."
This testimony, of course, was beneficial to the appellant because it tended to cast doubt upon the police officers' testimony that the appellant placed the pills in his mouth, after having put them into his "crotch area."
At the hearing on the motion for a new trial, the trial court refused to allow any of the subpoenaed jurors to testify. The trial court did, however, allow defense counsel the opportunity to make an "offer of proof." At the hearing, defense counsel stated that he, along with the assistant district attorney, discussed with the jurors what "they thought about the case, et cetera", after the trial was completed. At this time, according to defense counsel, "it came to my attention that one of the jurors started mentioning about some experiments that she had done at home with pills." When the defense counsel attempted to question the juror further, she "got a little apprehensive" and refused to give an affidavit for purposes of the hearing on the motion. After discussing the matter of "experiments" with some of the jurors, two of them told the defense counsel that "they don't know anything about what I'm talking about." However, according to defense counsel, "at least two jurors ... were tainted by the extraneous facts being introduced into the deliberative process."[2]
The "extraneous evidence" considered by the jurors, according to the defense counsel's offer of proof, consisted of the following:
"[Defense counsel]: I would expect that... one of the jurors [would testify that] she went home and got some of her pills that she had at home and ran experiments on them similar to what the expert who testified at trial.
"If you remember, Ms. Sylvia Bryant was the State toxicologist. She said the type of pills that were introduced into evidence by the State, if they were exposed to moisture, would have melted down some and something would have been rubbed off on them. And the pills, clearly nothing had been rubbed off.
"The policeman testified that either the pills came out of the guy's pants or [he] had them in his mouth. And that was one of the contentions of the defense was [sic] that if the pills were in either one of those two places they would have been subjected to moisture and they would have been [sic] melted down.
"[The juror] went home and got some pills off of her shelf and put them in her mouth and put them in her pants and walked around with them to see if they would melt down. And they didn't melt down.
"She discussed that home experiment with other members of the jury."
According to the defense counsel, "at least some of [the jurors] would know that there was an extraneous fact introduced."
The defense counsel went on to state that the following conversation took place when he talked with the juror who conducted the experiment:
"[Defense counsel]: [The juror] told me she went home that night. If you remember, the jury broke and came back. They broke about 5 o'clock and came back the next morning to deliberate after our closing arguments.
"She said she went home and got some pills that she had at home and put them in her mouth and pulled them out to see if they would melt down any. She put them in her pants and walked around to see if the moisture would melt them down any. And it didn't.

*785 "But she said she did that because she was worried about the case and wanted to make the right decision. And that was one of the big points at the trial."
In denying the motion for a new trial, the trial court stated as follows: "I'm not going to allow you to call the jurors to testify concerning their deliberations and what may have occurred and what may not have occurred."
The appellant argues that the above "offer of proof" entitled him, at the very least, to an evidentiary hearing on the merits of his motion. In support of his position, the appellant cites Tillman v. State, 374 So.2d 922 (Ala.Cr.App.1978), cert. quashed, 374 So.2d 926 (Ala.1979). In Tillman, the case was remanded to the trial court with "directions for the trial court to hold an evidentiary hearing on the issue of whether or not any juror was subjected in any manner to outside influence prejudicial to the appellant." Id. at 924. In reaching this conclusion, this court quoted from Burnett v. State, 355 So.2d 1139 (Ala.Cr.App.1977), as follows:
"`There [is] an alternative to reversing for a full new trial as the issue is whether or not the jurors were actually subjected to any improper influence during the periods when they separated. By remanding with directions to hold another such hearing, we may reinvest the trial court with jurisdiction to make a valid determination of this issue without the necessity of a retrial of the issue of guilt or innocence.'" (Emphasis in original.) 374 So.2d at 923.
It would appear that the Tillman approach would be appropriate in the instant case.
As this court, per Judge Bowen, stated in Atwell v. State, 354 So.2d 30 (Ala.Cr.App.1977), cert. denied, 354 So.2d 39 (Ala.1978):
"After a case has been submitted to the jury, their deliberations in the jury room are not subject to review. [Citations omitted.] Public policy forbids that a juror disclose deliberations in the jury room and demands that they be kept secret. [Citations omitted.] Permitting such impeachment would open the door for tampering with the jury after the return of their verdict. [Citation omitted.]" Id. at 37.
Under the authority of Atwell, an attempt to impeach a jury verdict by showing the "mental operation" of a juror is considered "improper and not subject to judicial recognition." Id. at 38. In general, "a juror may not testify to an occurrence in the jury room amongst themselves for the purpose of impeaching their verdict." (Citations omitted.) Garraway v. State, 337 So.2d 1349, 1353 (Ala.Cr.App.1976).
The exception to this "general rule" occurs when the jury considers "extraneous facts." This would include consideration of facts which occurred "outside the deliberations of the jury room." McElroy's, Alabama Evidence, § 94.06. In the present case, it would appear that the jurors may have considered "extraneous facts," and these facts may have improperly influenced their decision. For this reason, this case is remanded, with instructions that the trial court conduct an evidentiary hearing on the possibility that extraneous facts were considered by the jurors. In the event that the trial court concludes that the jury did consider certain "extraneous facts," it should then determine whether these facts influenced the jurors' decision, to the prejudice of the appellant.
REMANDED, WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
McMILLAN, Judge.
This case was remanded to the trial court for an evidentiary hearing on the appellant's motion for a new trial. As the basis for the motion for new trial, the appellant had argued that he was entitled to a new trial because the jury considered "extraneous" matters during their deliberations. In particular, the appellant argued that one of the jurors conducted an in-home experiment which she then discussed with other members of the jury. On remand, *786 the trial court conducted an evidentiary hearing on the post-conviction motion for a new trial. One of the jurors testified that she conducted an experiment at home, which she considered to be "worthless." The juror testified that she did not mention the experiment to any of the other jurors until after a verdict had been rendered. Additionally, the juror testified that her "experiment" did not influence the verdict in any way.
Other jurors testified at the hearing. Several of the jurors indicated that they were unaware of any experiments possibly performed by the juror in question. Any of the jurors who recalled a discussion of the experiment testified that it did not affect their decision in the case.
Because the decision had been reached prior to the time that the juror discussed her experiment with anyone else, it is apparent that the in-home experiment did not affect the outcome of the trial. Because there was no possibility of prejudice to the appellant, he is not entitled to a new trial.
OPINION EXTENDED;
AFFIRMED.
All the Judges concur.
NOTES
[1] In this case, there is no claim that entrapment took place. As a general rule:

"The primary purpose for the disclosure of the informer's name or identity is to prevent a miscarriage of justice in cases where an accused might have been entrapped into committing the offense for which he is prosecuted. The fundamental requirement of fairness compels disclosure in such cases where the informer plays a major and active part in bringing about the sale of narcotics and continues an active participant therein." Kilgore v. State, 50 Ala.App. 501, 503, 280 So.2d 206, 208 (1973).
(Note that the Kilgore case involved a conviction for the sale, as opposed to mere possession, of a controlled substance.)
[2] Although defense counsel made reference to the specific names of the jurors involved, we have not set them out in this opinion because their identity is not relevant to the legal issues involved. For this same reason, we have omitted any references to the name of the juror who conducted the "experiment" at home.