[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1370 
Calvin White was indicted for the unlawful possession of marijuana in violation of § 20-2-70, Code of Alabama 1975. His case was joined with that of his co-defendant, Randall Edward Ward, and the two cases were tried together. The jury found the appellant "guilty as charged in the indictment" and declined to fix a fine. The judge sentenced the appellant to fifteen years' imprisonment in the penitentiary.
On the evening of February 29, 1984, Gerard Herring, an employee of the Narcotics Division of the Alabama Bureau of Investigation, was on an undercover assignment. He and a confidential informant went to the residence of Mack Gates in Chambers County, Alabama. Upon their arrival, they encountered the appellant and Ward leaving Gates' house. One of the two was carrying a brown paper bag. The pair left in a Ford automobile.
Herring purchased one-quarter of a pound of marijuana from Gates for $160.00. The marijuana was contained in a zip-loc bag which was placed in a brown paper bag similar to the one the appellant and Ward were seen carrying.
After Herring and the informant left Gates' residence, they drove south from Chambers County on I-85 toward Opelika. They were following a Blazer occupied by Investigator Freddy Strength, Officer Bobby Brock, Detective Jessie Seroyer and Investigator Jamie Thomas. These officers were providing back-up support for Herring and the informant during the buy at Gates' residence. Both the Blazer and the vehicle in which Herring and the informant were riding were unmarked vehicles.
During the course of the trip back to Opelika, Herring observed a "light green or maybe a bluish color" Ford pass by at a high rate of speed. There were two black males in this vehicle. Herring remarked to the informant that the Ford looked similar to the one that they had seen leaving Gates' residence. The informant agreed and said it looked like Patricia Johnson's car. Herring identified the informant as "Mang" or "Yang" which was a nickname.
Immediately after the Ford passed by, Herring called Strength on the radio and told him that the Ford left Gates' house when he and the informant arrived. He said he saw the two men, who left in the Ford, carrying a paper bag and told Strength they could be "holding". At this point, the Blazer began pursuing the Ford.
A few minutes later Herring saw the Ford, the Blazer and a trooper's vehicle stopped beside the road. Herring proceeded to the trooper's office and later turned over the marijuana he had purchased to Brock. *Page 1371 
State Trooper W.A. Norred stated that on the evening in question, he received a dispatch from Seroyer concerning a vehicle traveling on I-85. Seroyer told Norred that he was behind a vehicle and he needed a blue light to stop it. The description of the vehicle was a 1975 white over blue Mercury.
When Norred first observed this vehicle on U.S. 29, he turned on the blue light. The vehicle turned onto South Railroad Avenue. The Blazer then pulled in front of the vehicle and it pulled over. Norred parked his vehicle in back of the vehicle.
Once this vehicle stopped, Norred saw the passenger throw a brown bag out of the window. Both occupants of the vehicle then jumped out. Norred told them to halt and they did. The driver of the vehicle was Randall Edward Ward and the appellant was the passenger.
The two were then searched. After they were searched, Seroyer picked up a bag from the grass and looked in it.
Norred stated he did not remember why Seroyer wanted this vehicle stopped. Seroyer did tell him that the vehicle was clocked going 65 miles per hour in a 45 mile per hour zone. Norred later found out the vehicle was registered to Patricia Johnson.
Taylor Noggle, a criminalist and a drug chemistry coordinator for the Department of Forensic Sciences, testified that he received a manila envelope from Seroyer. After performing tests on the contents, he determined that the plant material was marijuana. The weight of the marijuana was 105.92 grams.
Jessie Seroyer, a vice and narcotics officer with the Opelika Police Department, testified that on the night of February 29, he, Brock, Strength and Thomas went to Chambers County to provide back up support for Herring and an informant during a drug purchase. After the purchase had been made, they proceeded back to Opelika on I-85. Herring, who was following the Blazer in which Seroyer was riding, radioed and described a vehicle which he had seen at Gates' residence. Seroyer then saw this vehicle pass by at a high rate of speed. He recognized the vehicle as that belonging to a known drug dealer named Patricia Johnson.
The vehicle turned off I-85 onto U.S. 29 and the officers followed it. The vehicle had been clocked speeding. A call was made to Trooper Norred to stop the vehicle. Norred met them on U.S. 29 and followed them onto South Railroad Avenue. He then turned on the blue light and the vehicle stopped. The Blazer pulled in front of the vehicle.
Once the vehicle was stopped, Seroyer saw the passenger of the vehicle throw a brown paper bag out of the window. The occupants of the vehicle were searched and Seroyer found a paper bag about five feet from the vehicle. Inside the bag was a zip-loc bag which contained green vegetable material. He placed the bag in an envelope and gave it to Noggle.
Seroyer identified the confidential informant known as Yang, who accompanied Herring that night, as Darryl Collier.
Wallace Ward testified that he has a contracting business and Randall Ward worked for him on the day of February 29, 1984. He stated he gave Randall Ward a ride home that day and Ward wanted an advance on his salary.
Randall Ward testified that on the day in question, Wallace Ward gave him a ride home and lent him $15.00. Randall Ward then caught a ride to Patricia Johnson's house. Ward asked to borrow her car and she gave him her keys. After riding around Opelika, Ward saw the appellant. The appellant asked him for a ride home. Ward then asked the appellant if he wanted to go meet two ladies in Valley and the appellant agreed. Ward stated that the appellant was drunk.
During the trip to Valley on I-85, the appellant fell asleep. Ward decided to turn around and go back to Opelika. When Ward got off the interstate at U.S. 29, he saw the blue lights. He pulled over and stopped the vehicle. Ward woke up the appellant and they got out. The appellant *Page 1372 
had to open the door from the outside because the door handle wouldn't work.
Ward testified that the officers hit him and the appellant. He said Seroyer went down by the railroad tracks and came back with the paper bag.
Ward denied that the marijuana was his or that he had been at Gates' residence. He said that the appellant never threw anything out of the window.
The appellant took the stand and corroborated Ward's testimony.
 I (A)
Prior to trial, the State filed a Motion for Joinder of Defendants. The trial judge ordered that Ward and the appellant be tried together and their cases joined. The appellant challenges this procedure on the ground that the term consolidation should have been used rather than joinder because the two defendants were separately indicted.
We agree with the appellant that the term consolidation should be used by the State when seeking to join defendants for trial once they have been separately indicted. However, merely because the State made a Motion for Joinder rather than consolidation does not render the trial court's order joining these two defendants for trial void. In fact, Rule 15.4 (b), Alabama Temporary Rules of Criminal Procedures states that:
 "Consolidation: If defendants are charged in separate indictments, informations, or complaints, the court, on its own initiative or on motion of any party, may, no later than seven (7) days prior to trial, order that the defendants be joined for the purposes of trial if the defendants could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same if the prosecution initially had been under a single indictment, information, or complaint. However, the court shall not order that the defendants be tried together without first providing the defendants and the prosecutor an opportunity to be heard." (Emphasis added).
Therefore, the trial court's order, that Ward and the appellant be joined for trial, was proper.
 (B)
The appellant contends that he did not receive a fair trial as a result of the joinder because there is no procedure for determining which defendant strikes jurors first, which defendant conducts cross-examination first or which defendant presents his defense first.
Initially, we must point out that there is a procedure for determining which defendant strikes jurors first. Rule 15.4 (h), Alabama Rules of Criminal Procedure provides:
 "Additional Jurors: If two (2) or more persons are being tried jointly, to the minimum number of names otherwise required for striking there shall be added twelve (12) additional names for each additional defendant; provided, there shall then also be added so many more names as may be necessary to allow all defendants an equal number of strikes. The district attorney shall strike first, and shall strike one (1) name from the list; then one (1) defendant shall strike one (1) name from the list; then the district attorney shall strike one (1) more name from the
 list; and then the next defendant shall strike one (1) name from the list. The defendants shall each have a turn in the same order as the filing of the charges against them; or if they were charged in the same instrument, then in the order in which their respective charges appear therein; unless they agree upon a different order. The parties shall continue to strike off names alternately, first the state, then one defendant, in this fashion until only twelve (12) names remain on the list, and the twelve (12) persons thus selected shall be the jury charged with the trial of the defendants." (Emphasis added).
While we acknowledge that defendants who are jointly tried will encounter tactical problems, we do not hold that these *Page 1373 
problems necessarily deny the defendants a fair trial. The provisions of Rule 15.4 concerning joinder and consolidation are designed to promote judicial economy and efficiency. At the same time, the provisions of Rule 15.4 pertaining to severance are designed to ensure that defendants are not prejudiced by the joinder to the extent that they are denied a fair trial. This rule was promulgated with the knowledge of the tactical problems likely to be faced by defendants who are tried together.
The lack of a procedure mandating which defendant proceeds first works to the defendant's benefit. The defendants can decide for themselves who should proceed first and, therefore, they can make the decisions they feel are most advantageous to their defense.
The appellant also contends that Rule 15.4 infringes on a defendant's right to remain silent in the situation where his co-defendant takes the stand. We do not hold this to be the case. If a defendant chooses not to take the stand, the jury will be instructed that he has this right and the fact that he did not testify should not be held against him. Therefore, we do not find that Rule 15.4 violates a defendant's right to remain silent.
 (C)
The appellant argues that he was denied a fair trial because he only had one-half as many jury strikes as the State as a result of the joinder. The procedure for the striking of jurors when defendants are jointly tried, as proscribed by Rule 15.4, has been upheld by this court. See Holsemback v. State,443 So.2d 1371, 1374 (Ala.Crim.App. 1983). Therefore, we find no merit to this argument.
In the case at bar, a motion for severance was made by defense counsel. Once joinder has been ordered, severance is within the trial judge's discretion. United States v.Cannington, 729 F.2d 702 (11th Cir. 1984). In making his decision as to whether a motion for severance should be granted, the trial judge should weigh the possibility of prejudice to the defendants against the public interest in judicial economy and efficiency. Holsemback, supra; UnitedStates v. Walker, 720 F.2d 1527 (11th Cir. 1983), cert. denied,Gustin v. United States, 465 U.S. 1108, 104 S.Ct. 1614,80 L.Ed.2d 143 (1984).
This court holds that the trial judge did not abuse his discretion by denying defense counsel's motion for severance. Therefore, the joinder of Ward and this appellant was proper.
 II
Herring testified at trial that the confidential informant also recognized the vehicle that passed by them on I-85 as the one that was seen at the Gates' residence. At this point, the trial judge stated that the informant had become a witness to an event and ordered the State to divulge the identity of the informant.
Herring stated that he only knew the informant's nickname which was "Mang" or "Yang". Later in the trial Seroyer stated that the informant's name was Darryl Collier.
After the trial, the appellant filed a motion for new trial. One of the grounds for new trial was that the appellant was denied the opportunity to confront and cross-examine Collier. At the hearing on the motion, defense counsel submitted a transcript of Collier's testimony in another trial, in which he denied being a confidential informant for the Opelika Police Department.
The appellant now argues on appeal that he was deprived of a fair trial because he did not have the opportunity to confront and cross-examine Collier. Before we address this argument, we must note that it was unnecessary for the trial judge to order that the informant's identity be revealed.
 "This court in Davis v. State, 46 Ala. App. 45, 237 So.2d 635, 638, affirmed, 286 Ala. 117, 237 So.2d 640
(1970), stated: "`In Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, it is fairly well established that the prosecution *Page 1374 
is entitled to withhold the identity of the informant for at least two reasons: (1) to foster its activities in detecting crimes by keeping open lines of communications with the underworld and (2) to protect informers from harm or reprisal.'" An exception to this privilege is stated in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This exception arises where (1) it appears the informer's name is necessary at the trial itself to show the accused's innocence or guilt and (2) the informant was an active participant in the crime."
Thornton v. State, 390 So.2d 1093 (Ala.Crim.App.), cert. denied, 390 So.2d 1098 (Ala. 1980).
 "The primary purpose for the disclosure of an informer's name or identity is to prevent a miscarriage of justice in cases where an accused might have been entrapped into committing the offense for which he is prosecuted. The fundamental requirements of fairness compel disclosure in such cases where the informer plays a major and active part in bringing about the sale of narcotics and continues an active participant therein."
Kilgore v. State, 50 Ala. App. 501, 503, 280 So.2d 206 (1973);Stanford v. State, 448 So.2d 472 (Ala.Crim.App. 1984).
First of all, the appellant never raised the defense of entrapment. In fact, the appellant denied being at Gates' residence, purchasing the marijuana, and throwing the bag, which contained marijuana, out of the window. Therefore, the main reason in forcing disclosure of the identity of an informant was not present in the case at bar.
Secondly, Collier was not an active participant or even an eyewitness to the crime. He was not present when the appellant purchased the marijuana or when he was seen throwing the bag containing the marijuana out of the window.
Thirdly, Collier's testimony was not crucial or even material to the issue of the appellant's guilt or innocence. Herring testified that, when he stated to the informant that the car that had just passed by was the same vehicle that they had seen at Gates' residence, the informant agreed and said the car looked like Patricia Johnson's car. Certainly, this information was unnecessary to establish the appellant's guilt as to the possession of the marijuana.
Herring stated that he saw two men come out of Gates' residence with a brown bag and get into a car. This car later sped by his vehicle on I-85. This information was relayed to Seroyer who followed the car until it was stopped by Norred. Seroyer testified the car looked similar to the one owned by Patricia Johnson, a known drug dealer. When the car was stopped both Norred and Seroyer saw the passenger throw a brown bag out the window. A brown bag was recovered and it contained marijuana.
Collier's testimony would not have established the appellant's guilt or innocence. Herring's testimony concerning Collier only bolstered his testimony that he had previously seen the car that passed by them at the Gates' residence.
Therefore, we hold that since it was unnecessary for Collier's identity to have been revealed, the appellant's right to confront and cross-examine him was not abridged.
Furthermore, the appellant contends that he had no opportunity to investigate and subpoena Collier because his identity was revealed so late during the course of the trial. We find no merit to this argument.
The appellant could have asked for a continuance so that he could locate Collier, interview him and perhaps subpoena him. Any prejudice suffered by the appellant could have been eliminated by this course of action. United States v.Burkhalter, 735 F.2d 1327 (11th Cir. 1984). Moreover, "[t]he failure to ask for compulsory process is a waiver of it."Thornton, supra at 1098.
 III
The appellant contends that his motion to suppress the marijuana should *Page 1375 
have been granted because the marijuana was seized as a result of an illegal stop of the vehicle in which he was riding.
 "To justify governmental intrusion upon the Fourth Amendment rights of a private citizen, specific and articulable facts must be present which, when taken together with rational inferences from those facts, would reasonably warrant such intrusion. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968); Sterling v. State, 421 So.2d 1375
(Ala.Crim.App. 1982). In situation such as the case at bar, we must ask `. . . [W]ould the facts available to the officer at the moment of the seizure . . . "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' Terry v. Ohio, supra; Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973)."
Traylor v. State, 439 So.2d 178 (Ala.Crim.App. 1983).
 "Section 15-5-30 of the Code of Alabama 1975, allows the police, without probable cause, to `stop any person . . . in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him, his name, address and explanation of his actions.' This statute gives the police authority to stop and detain a person breifly for questioning based on a suspicion that the person might be engaged in criminal activity."
Sterling v. State, 421 So.2d 1375 (Ala.Crim.App. 1982). (Emphasis added).
In the case at bar, the vehicle in which the appellant was riding was stopped on a public roadway. Certainly a public roadway is a public place within the meaning of § 15-5-30.
Seroyer stated that he clocked the vehicle in which the appellant was riding and that it was exceeding the speed limit. He testified this was his reason for stopping the vehicle. Speeding is a misdemeanor and ". . . misdemeanors have routinely been classified as `public offenses' in Alabama and other jurisidictions." Shultz v. State, 437 So.2d 670
(Ala.Crim.App.), cert. denied, 437 So.2d 670 (Ala. 1983). Seroyer had reason to suspect a public offense had been committed since he personally observed the vehicle speeding and would have been justified in stopping the vehicle himself.
Merely because the stop was effectuated by Norred does not make the stop illegal. Seroyer did not stop the vehicle himself because his car did not have a blue light. He did follow the vehicle from the time it was seen speeding until it was stopped. Although Norred testified that he couldn't remember why Seroyer wanted him to stop the vehicle, he stated that marked cars frequently assist unmarked cars in making stops of speeding vehicles. Seroyer, however, stated that, when he made the dispatch to Norred, he gave a description of the vehicle, said it was speeding and that he needed a blue light to assist him in stopping it. The mere fact that Seroyer's vehicle did not have a blue light should not render this stop illegal.
Furthermore, Norred had reasonable cause to stop the vehicle. Reasonable cause to stop a vehicle does not have to be based on personal observation. Butler v. State, 380 So.2d 381
(Ala.Crim.App. 1980). A police officer may stop a vehicle based on information received from a dispatch. He is justified in making the stop if, after receiving the description of the vehicle, he observes the vehicle in the general vicinity of the offense soon after the offense has been committed. Traylor, supra.
In Butler, supra, an officer stopped a vehicle solely on information he received from headquarters. The officer was given a description of the car and the area in which it was seen. He was not given any information of the nature of the crime that had been committed. This court held that the officer had reasonable cause to stop the car.
The facts within the knowledge of Seroyer were imputed to Norred and, thus, Norred had reasonable cause to stop the vehicle in which the appellant was riding. *Page 1376 
See Campbell v. State, 354 So.2d 325 (Ala.Crim.App. 1977);Robinson v. State, 361 So.2d 379 (Ala.Crim.App.), cert. denied,361 So.2d 383 (Ala. 1978); Parker v. State, 397 So.2d 199
(Ala.Crim.App.) cert. denied, 397 So.2d 203 (Ala. 1981).
The appellant further contends, citing United States v.Ceballos, 654 F.2d 177 (2nd Cir. 1981), that the stop amounted to an arrest and the officers did not have probable cause to effectuate an arrest. The facts of United States v. Ceballos, supra, will be stated briefly. The police were conducting surveillance of a building in which a known drug dealer resided. The accused, who supposedly fit the "profile" of the dealer's customers [he was Hispanic], was observed leaving the building with a brown bag in his hands. When he reached the street, the accused looked down the street in a suspicious manner and then got in his car. After the accused drove a few blocks, the officers stopped his car by blocking it with their vehicles. The police then exited their vehicles with their guns drawn. When the accused got out of his car, he dropped a bag which contained cocaine. The U.S. Second Circuit held that an arrest occurred when the officers blocked the progress of the accused's car and exited with their guns drawn.
The facts of this case can be easily distinguished from the case at bar.
In the case at bar, the vehicle in which the appellant was riding was stopped by a blue light. The mere fact that Norred parked his vehicle in back of the suspects' vehicle and Seroyer's vehicle was parked in front of their vehicle is of no consequence. The suspects' vehicle was already stopped and there is no evidence that the officers parked their vehicle in this manner in an attempt to block the progress of the suspects' vehicle as was done in United States v. Ceballos, supra. Furthermore, in that case, the officers exited their vehicles with their guns drawn. In the case before us, the officers drew their guns when the appellant and Ward jumped out of their vehicle and looked like they were going to attempt to run. After the two stopped, the officers put away their guns. The Second Circuit in United States v. Ceballos, supra, explicitly stated that the case before them was not one where the use of force was precipitated by the actions of the accused. The sole reason the officers in the case at bar drew their guns was because of the actions of the two suspects.
We hold that the stop of the vehicle, in which the appellant was riding, was legal. Hence, the marijuana should not have been suppressed because it was properly and lawfully seized after the appellant threw it out the car window.
 IV
The appellant contends that the State failed to prove possession beyond a reasonable doubt because the evidence did not show that the appellant had possession of the marijuana or knowledge that the bag contained marijuana.
The three elements which are necessary to prove possession of marijuana are . . . "(1) actual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control." Franklin v. State,437 So.2d 609 (Ala.Crim.App. 1983); Jones v. State, 432 So.2d 5
(Ala.Crim.App.), cert. denied, 432 So.2d 5 (Ala. 1983).
In addition to these three elements, the State must also prove that the accused had knowledge of the presence of marijuana. Jones, supra; Roberts v. State, 349 So.2d 89
(Ala.Crim.App.), cert. denied, 349 So.2d 94 (Ala. 1977).
"In German v. State, 429 So.2d 1138 (Ala.Crim.App. 1982), this court held:
 `Proximity to illegal drugs, presence on the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating circumstances. United States v. Ratcliffe, 550 F.2d 431, 434 (9th Cir. 1976).'"
Jones, supra at 7.
After the car in which the appellant was riding was stopped, the appellant *Page 1377 
was seen throwing a brown bag out of the car window. A brown bag containing marijuana was found in close proximity to the car. Earlier that evening, Herring saw the appellant and Ward leaving Gates' residence with a brown paper bag similar to the one which contained the marijuana that Herring purchased from Gates. The car in which the appellant and Ward were riding belonged to a known drug dealer.
The act of the appellant throwing the brown paper bag out the car window, coupled with the surrounding circumstances, was sufficient to prove the appellant's possession of the marijuana and his knowledge of the presence of marijuana in the brown bag in question. The appellant's actions showed his actual physical control of the bag containing marijuana, his intention to exercise dominion of it and an external manifestation of his intent and control. Furthermore, the act of throwing the bag out the window when the car was stopped by the police tended to show the appellant's guilty conscience. It is obvious that he threw the bag away so that the marijuana would not be found in the car or on his person.
 ". . . [C]ircumstantial evidence sufficient to support a jury finding of guilt [of possession of marijuana] may be found in the accumulation of several relatively insignificant pieces of evidence; or it may be presented in the form of a single highly significant or incriminating event." Jones, supra at 7.
We hold that there was sufficient evidence presented by the State from which the jury could conclude, by fair inference, that the appellant was guilty of the unlawful possession of marijuana. Jones, supra. The issue of the guilt or innocence of the appellant was a question for the jury which they properly resolved in this cause.
This case is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.