Willie F. Eady was indicted for possession of cocaine in violation of § 20-2-70, Code of Alabama 1975. The jury subsequently found him "guilty of possession of cocaine as charged in the indictment." He was sentenced to 15 years' imprisonment in the state penitentiary and fined $2,000.00.
Sheriff Lamar Hadden of Houston County, Alabama, testified that on May 17, 1985, he and Sgt. Donald Valenza were in Malone, Florida to observe the activities of a black male, nicknamed "Dogman", known to them as one Willie Frank Eady. The sheriff testified that, while in Malone, the informer who supplied the information to them concerning "Dogman" met with them and stated that the appellant was in the possession of marijuana contained in a brown paper bag. The informant told them that Eady would be driving a white Pontiac and gave them the tag number. The informant had just left the bar where he had seen Eady pick up the drugs before he met with Sheriff Hadden.
Immediately after the informant left, Sheriff Hadden, who was parked a few blocks away from the bar, recognized a vehicle which matched the description of the vehicle the informant had said the appellant would be driving.
The Sheriff testified that he followed the Pontiac back into Alabama. During this time he recognized the tag number of the vehicle as being the one which the informant had given him. When the sheriff turned the blue light on and attempted to stop the vehicle, this vehicle sped up. During a short chase a brown paper sack was thrown out of the window of the vehicle on the driver's side.
About a quarter or half mile from where the bag was thrown, the vehicle stopped. Sheriff Hadden then arrested the driver for eluding a police officer and made a search of the car. The sheriff identified the driver *Page 1163 
of the Pontiac as being Willie F. Eady, the appellant. The appellant was the sole occupant of the vehicle.
After arresting appellant and having him transported from the scene, the sheriff and Sgt. Valenza went back to the point where the brown sack had been thrown from the vehicle and recovered the brown sack and a coin purse from the side of the roadway. The sheriff testified that the sack contained green plant material which looked like marijuana. The coin purse contained seven packets of white powder. The coin purse was found lying next to the paper sack. The sheriff testified that he and Sgt. Valenza did not have any trouble locating the items. At that point the items were taken to the lab by Sgt. Valenza.
On cross-examination, Sheriff Hadden testified that the chase occurred at night and ended with the appellant stopped at an intersection with a stop sign. No controlled substances were found on appellant's person when he was searched during this arrest. The sheriff testified that he did not actually see the appellant throw the sack out of the window. He also testified that from the time the sack was seen leaving the vehicle until the time it was recovered from the roadway, the area where the sack was found had been unobserved and unguarded for about ten minutes.
The State then called Sgt. Valenza. He testified that he and Sheriff Hadden were in the south end of Houston County, Alabama, when the sheriff received information concerning the white Pontiac automobile. A few minutes later he saw a white Pontiac and he and the sheriff followed it into Alabama. Sgt. Valenza was driving the sheriff's vehicle at the time. When Sgt. Valenza turned on the blue light and tried to stop the white Pontiac, it sped up and he chased it, reaching speeds between 90 and 100 miles per hour. Sgt. Valenza observed a brown paper sack and what looked like a black purse being propelled from the driver's window during the chase. Sgt. Valenza testified that he stopped the vehicle at a stop sign and identified the driver as being the appellant. Sgt. Valenza testified that the appellant was then arrested for eluding the police and soon thereafter he returned to the area where the items had been seen leaving the window of the appellant's car. He testified that he took possession of the items found and identified them. He kept them until the following Monday morning at which time he gave them to Lt. Gilley, who was in charge of transporting evidence to the lab. Sgt. Valenza testified that before he handed over the items to Lt. Gilley he sealed them in an envelope with his initials on it. At the time he turned it over to Lt. Gilley it had not been altered in any way. Sgt. Valenza then opened the envelope, identified the black purse, the seven foil packets containing white powder and the plant material found on the side of the road and stated that they were in substantially the same condition as when he found them. The items were marked for identification and admitted into evidence.
On re-direct examination, Sgt. Valenza testified that from the time the white Pontiac vehicle was stopped until he was finished retrieving the property on the roadside, there was no other traffic in the area.
Mike Gilley, a lieutenant with the Houston County Sheriff's Department in charge of the Criminal Investigation Division, testified that he was given the items found on the roadside on May 20, 1985. He delivered them to the Alabama Forensic Sciences Lab in Enterprise, and into the custody of a man named David Thorne. Lt. Gilley testified that the items were in a sealed envelope when he received them and also when he gave them to David Thorne. He testified that the envelope was not altered in any way while it was in his custody. Lt. Gilley testified that the street value of cocaine is approximately $125.00 per gram. He stated that the street value of 46.36 grams of marijuana is approximately $200.
The State then called Joe Saloom, who works for the Department of Forensic Sciences in Enterprise. He testified that he had examined the suspected controlled substances and determined that they were, in *Page 1164 
fact, cocaine and marijuana. He later returned the evidence to Lt. Mike Gilley. Saloom testified that the envelope which contained the substances was sealed when he received it from David Thorne. Saloom was able to identify the items as being those he had examined because he recognized his initials and identifying number which he had placed on them previously.
The State then rested and the defendant moved to exclude the State's evidence based on its failure to "establish the chain of possession of the alleged controlled substance." (R. 71).
The appellant testified that he was in Malone, Florida on May 17, 1985 for the purpose of seeing a friend about a truck. He testified that he went into a business establishment for a snack and then left Malone proceeding toward Ashford, Alabama. He testified that when he turned onto the Malone-Ashford Road he heard a gunshot and accelerated his vehicle to 80 or 90 miles per hour to get away from whoever fired the shot. He stated that he did not know that it was the sheriff who was following him. The appellant testified that he stopped at the stop sign at Beverly Road and was arrested by the sheriff and Valenza. He stated that he did not buy any marijuana or cocaine, did not have either substance with him and did not throw anything from the window of his car. He testified that his windows were rolled up. The appellant acknowledged that he had been convicted of three counts of burglary in May, 1961, one count of robbery in 1965 and one count of petty larceny in 1974.
The appellant contends that the evidence presented by the State was insufficient to support the jury's verdict. This issue was properly preserved for review by this court. See,English v. State, 457 So.2d 458 (Ala.Cr.App. 1984) and cases cited therein.
In order to prove possession the State must prove that the defendant had actual or potential physical control, the intention to exercise dominion and knowledge of the presence of the drugs. White v. State, 479 So.2d 1368 (Ala.Cr.App. 1985). The State must also show external manifestations of intent and control. White, supra.
The test used to determine the sufficiency of the evidence is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt.Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978). Where there is legal evidence from which the fact-finder may, by fair inference, find the accused guilty, this court will not overturn the verdict. Hughes v. State, 12 So.2d 296
(Ala.Cr.App. 1983).
The evidence presented by the State was sufficient to support the verdict. The State presented the testimony of two officers who positively identified the appellant as the driver of the white Pontiac automobile with the same license tag number which was described by the informant. The evidence showed that the appellant sped up to at least 90 miles per hour after being followed by the officers. The officer saw the bag and the coin purse come out of the window of the vehicle during the chase. Not more than 10 minutes after appellant was arrested, the officers went back to the area where the bag had been dropped and retrieved it and the coin purse for analysis. The appellant was the sole occupant of the vehicle and the area where all of this occurred was relatively untraveled.
Furthermore, this court recently considered the sufficiency of the evidence and upheld the conviction on that basis in a case with facts very similar to those here. White, supra.
The appellant's motion to exclude at trial was based on the contention that the evidence as to the controlled substance should not have been admitted due to the State's failure to establish the "chain of possession" of the substance, specifically, its delivery to Mr. Saloom. Although the issue of the admissibility of this evidence was not properly preserved since there was no timely objection made at the time of its admission, Waddle v. State, 473 So.2d 580 (Ala.Cr.App. 1985), we note that the evidence *Page 1165 
was sufficient to establish a proper chain of custody.
Sgt. Valenza testified that he delivered the substances to Lt. Gilley in a sealed envelope bearing his initials. At the time he delivered it, the envelope had not been altered in any way. Lt. Gilley testified that he delivered the envelope, which had not been altered in any way, to David Thorne at the Forensic Sciences Lab in Enterprise. Joe Saloom, who performed the analysis of the material, then testified that he had received the envelope in a sealed condition from David Thorne, and later returned it to Lt. Gilley.
For the above stated reasons, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.