The appellant was convicted of possession of cocaine, in violation of § 20-2-70, Code of Alabama (1975). She was sentenced to 15 years' imprisonment and ordered to pay $5,000 to the Victim's Compensation Fund.
Jesse Seroyer, Jr., detective of vice and narcotics with the City of Opelika Police Department, testified that he had been conducting an investigation of the appellant during December 1986. Pursuant to that investigation, he secured a search warrant on December 12, 1986, in order to search the home of the appellant. He and several other officers arrived at the appellant's residence in marked and unmarked cars. When there was no answer at the door, the door was "forced in." They discovered two men downstairs in the house: Donald Wayne Jackson and Lindsey Jackson. He further testified that several drug paraphernalia were found in a trash can in the den and that a large amount of residue was found in smoking pipes. A Pyrex dish, containing residue of cocaine, was found under the sofa. A pink dish was found containing small particles of residue believed to be cocaine. A trash can was seized which contained a little tube with residue, an eye dropper, a piece of tin foil, a paper match, a piece of cotton swab, a wire with swabs on each end, and a smoking pipe. Officer Seroyer also testified that most of these items were used in making crack from cocaine. Another dish was found that contained a razor blade, a razor blade holder, and a swab. A metal canister top, containing a little plastic bag (referred to as a "baggie") with some substance therein, was also found, as well as a shoulder bag containing several baggies, a spoon, several pieces of tin foil, the appellant's checkbook, and an identification card with the appellant's name on it. Outside of the appellant's residence, a canister was recovered from a trash can; the canister contained a letter with the appellant's name at the top and her address. It also contained a small pipe, several razor blades, and particles of cocaine. Another tin container found in the trash can held tin foil and some type of substance contained in baggies. Officer Seroyer further testified that the appellant was not at her home and was not arrested on that date.
The custodian of the records of Opelika Water Board and Power Department testified that the appellant was responsible for the water and power bills at the address of the house that was searched.
Donald Wayne Jackson, one of the men found inside the appellant's home when it was searched, testified that he had visited the appellant at her home a few times. He testified that he had stopped by her home on the morning in question, and had driven the appellant to a phone booth and back home. Thereafter, he said, she stated that she needed to go to the store. He testified that he was present at the house approximately ten minutes before Officer Seroyer arrived. He further testified that the appellant instructed him "not to open the door for anybody" before she had left. He stated that he did not smoke any cocaine at the appellant's home on that date.
Lindsey Jackson testified that he had gone to the appellant's home on the morning of the day in question. He testified that the appellant and he watched television and drank beer until Donald Jackson arrived. Thereafter, he said, Renee Echols arrived and left with the appellant. Before they returned, the police arrived. The appellant had instructed them not to answer the door. Although both Donald Jackson *Page 54 
and Lindsey Jackson testified that they did not smoke any cocaine that day or attempt to hide anything, Lindsey Jackson testified that when the police entered the home, he kicked a dish which was lying beside him under the sofa and Donald Jackson testified that he pushed a dish away from him.
Renee Echols testified that on the day in question the appellant and her children were the only residents of the address at which the search was conducted. She testified that she and the appellant left the house and drove to a friend's apartment and then stopped so that the appellant could use the telephone. Thereafter, she said, as they were approaching the appellant's home, they observed what appeared to be a couple of unmarked police cars in her driveway. Renee Echols further testified that she also saw a marked police car. She asked the appellant what to do and the appellant instructed her to "keep on goin'." She said that the appellant further stated that "whatever they found was going to have to be pinned on them 'cause she wasn't there." She further told Echols, Echols said, that she had believed a bust "was going to go down," so she had already cleaned out the house. She then asked Echols to take her to a telephone, where she attempted to make some calls.
Later that evening, the appellant, Echols, and several other friends went to a house belonging to someone named Janice. Echols testified that Janice appeared to be "shocked" when she saw the appellant; that the appellant asked Janice if she still wished to purchase the ounce as she had indicated on the previous Thursday night when she purchased some drugs from the appellant; that Janice responded that she needed an ounce of cocaine by the next morning; that Janice then attempted to use the telephone, but the appellant told her not to do so because she felt that Janice might have been trying to call "someone"; that after the appellant and Echols left the house, the appellant stated that she believed that Janice had set her up when she made a purchase of drugs on the previous Thursday, and that Janice had brought a "white guy" to the appellant's house and the appellant stated she believed that he was a police officer.
David Stewart testified that he occasionally visited the appellant at her home from approximately September 1985 until March 1986. He testified that he often observed the appellant smoking cocaine there. He testified on cross-examination that he had had no connection with the appellant during December 1986.
 I
The appellant argues that there was insufficient evidence to convict her of the possession of cocaine. The appellant alleges that the State was allowed to introduce improper testimony (which will be discussed in the subsequent issues) that was remote to this case. However, she fails to establish how the State's evidence was insufficient.
In order to prove unlawful possession of cocaine, under §20-2-70, Code of Alabama (1975), the State must show actual or potential physical control of the cocaine, the intention to exercise dominion over the cocaine, knowledge of its presence, and external manifestations of intent and control. White v.State, 479 So.2d 1368, 1376 (Ala.Cr.App. 1985). This court will not overturn the jury's verdict where legal evidence exists from which the jury could reasonably find the appellant guilty.Eady v. State, 495 So.2d 1161, 1164 (Ala.Cr.App. 1986).
The State sufficiently proved that the appellant had constructive possession of the cocaine. "While some degree of dominion and control over the contraband is a necessary prerequisite to conviction under § 20-2-70, it is not necessary that this control exist at the time of the arrest." Hamilton v.State, 496 So.2d 100, 103 (Ala.Cr.App. 1986). The State provided evidence that the cocaine was found at the appellant's residence and that she was the only person living there at that time. There was evidence that debris of the cocaine was found in the appellant's personal effects. It was also found in her garbage cans and testimony was introduced that the appellant *Page 55 
stated that she was afraid that she might get caught and had attempted to clean out her house. There was evidence of her consciousness of guilt in that she instructed the driver of the car to avoid her house, when she observed the police cars that were present. See Hamilton v. State, supra, at 104.
 II
The appellant argues that the trial court erred in allowing the testimony of David Stewart concerning drug paraphernalia and incidences of the appellant's drug use which he had observed in the appellant's home prior to this offense. The record indicates that defense counsel objected to David Stewart's testimony on the grounds of remoteness, as his knowledge only extended until some ten months prior to this offense. However, Stewart's testimony was admissible as rebutting the appellant's theory of defense. The appellant defended this case on the premise that none of the residual contraband or drug paraphernalia which was found in her home belonged to her, but rather was brought into her home by Donald and Lindsey Jackson. As a rebuttal to this defense, the State offered the testimony of David Stewart, who testified that he had seen drug paraphernalia on numerous occasions in the appellant's residence.
"Rebuttal evidence, even evidence of prior crimes, is generally admissible within the sound discretion of the trial court." Peterson v. State, 452 So.2d 1372, 1375 (Ala.Cr.App. 1984).
Furthermore, there is no specific time period to define remoteness of evidence and where admissibility has been challenged on the grounds of remoteness, the decision is within the sound discretion of the trial judge. Primm v. State,473 So.2d 1149, 1157 (Ala.Cr.App. 1985). The trial court's decision as to such evidence will not be overturned on appeal absent an abuse of his discretion. Primm v. State, supra; C. Gamble,McElroy's Alabama Evidence, § 21.01 (1), (2), and (6) (3d ed. 1977).
 III
The appellant alleges that the trial court erred in allowing testimony as to events and conversations following her discovery that her house had been searched for drugs by the police. Specifically, she contends that the testimony given by Renee Echols concerning statements made by the appellant, regarding an alleged drug deal which transpired on the evening prior to the instant offense, were erroneously admitted as they were overly prejudicial and too remote to this offense.
This issue is not properly preserved for our review. The following transpired during the direct examination of Renee Echols:
 "A. We got in the car and we went over to Janice's and when we walked in Janice kind of looked shocked when she saw Ronnie. And Ronnie asked her if she still wanted to purchase that ounce 'cause she said Janice had been to her house that Thursday night and purchased some drugs from her. And she told her that she —
 "[DEFENSE COUNSEL]: Object to what she said to her Thursday night, Your Honor. Has nothing to do with this case.
 "THE COURT: Was the defendant present when this conversation was going on?
"THE WITNESS: Yes, she was.
"THE COURT: All right, go ahead.
 "A. Okay. And she said that — she asked her would she have an ounce of cocaine that next morning at nine-thirty. She had to have it at nine-thirty. She when we got to Janice's house, she asked her, she said —
 "[DEFENSE COUNSEL]: Wait a minute. I don't know who she is. Tell me who she is.
"THE WITNESS: Beg your pardon.
"[DEFENSE COUNSEL]: Who is she?
"THE WITNESS: She, Janice Roberts.
 "[DEFENSE COUNSEL]: Object to what Janice Roberts said, Your Honor.
 "Q. Was this said to defendant? Was Janice talking to Buronical Butler?
"A. Right. Buronical was talking to Janice. *Page 56 
"Q. Okay.
 "THE COURT: Just please attach names to whoever says what; okay?
"THE WITNESS: Okay."
Initially, we note that the witness had already testified to the previous purchase before any objection was made. See Allenv. State, 472 So.2d 1122 (Ala.Cr.App. 1985); Reeves v. State,456 So.2d 1156 (Ala.Cr.App. 1984). Moreover, aside from its untimeliness, defense counsel's objection was clearly not specific enough to apprise the trial court of his grounds. The trial court's follow-up questions to the witness indicate that he believed defense counsel's objection to be based upon hearsay grounds. Furthermore, the objections which defense counsel subsequently raised during this testimony were clearly made on the ground of hearsay. Thus, other grounds are waived.Breedlove v. State, 482 So.2d 1277 (Ala.Cr.App. 1985); Johnsonv. State, 479 So.2d 1377 (Ala.Cr.App. 1985).
 IV
The appellant argues that the search warrant was fatally defective because the information presented to the judge was vague and incomplete in that the police officer could not identify if the person from whom the informant bought the cocaine was a male or female. The record indicates that an informant, who was wired with a transmitter, conducted a monitored and controlled drug buy while a police officer listened in on the wire transmitter. The informant told the police that the appellant had sold him the cocaine which he brought from the house. The affidavit for the search warrant stated as follows:
 "Jesse Seroyer, Jr. has reason to believe that there is now being kept or concealed at 1307 Crawford Road in Opelika, Alabama, the residence of Buronical Calloway, Butler, alias, Cocaine (Hydrochloride) and Lawful United States Currency. On November 28, 1986, a Cocaine purchase was made from the residence of Buronical Calloway, Butler, Alias, being located at 1307 Crawford Road in Opelika, Alabama. The Cocaine purchase was made by a confidential informant. The informant has purchase [sic] Cocaine from Buronical Calloway Butler, alias, in the past three weeks and has identified Buronical Calloway, Butler, alias, as being the person who sold it. . . .
 "And the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: On November 12, 1986, a Confidential Informant purchased a One Hundred Forty Dollar piece of tin foil containing some white powder substance believed to be Cocaine or Crack (hydrochloride) from Buronical Calloway, Butler, Alias, at 1307 Crawford Road in Opelika, Alabama. The money used to make the cocaine purchase had been copied and serial numbers recorded by Detective Jesse Seroyer, Jr. 1307 Crawford Road is described as a two-story house with brick at the bottom and wood siding at the top, tan in color, trimmed in brown, located in Opelika, Alabama."
The affidavit was signed by Jesse Seroyer and the district court judge.
Detective Seroyer also testified that, while under oath, he advised the judge that he had personal knowledge in that he had purchased cocaine from that residence in the past and also had recordings of monitored drug purchases from that residence. The magistrate was apprised of sufficient information to establish probable cause for a search warrant. See § 15-5-3, Code ofAlabama (1975); Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
 "For a search warrant to be sufficient and satisfy the constitutional requirement of probable cause, the affidavit upon which it is based must state specific facts or circumstances which support a finding of probable cause. Otherwise, the affidavit is faulty and the warrant may not issue. Alford v. State, 381 So.2d 203 (Ala.Cr.App. 1979), cert. denied, 381 So.2d 206 (Ala. 1980).
 "Probable cause deals with probabilities, not legal technicalities. It is grounded upon those practical, factual considerations of everyday life upon which reasonable and prudent men act. *Page 57 Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948). Thus, probability and not proof necessary to convict for criminal activities is the standard for determining probable cause. Yielding v. State, 371 So.2d 951
(Ala.Cr.App.), cert. denied, 371 So.2d 962 (Ala. 1979)."
Carter v. State, 405 So.2d 957, 959 (Ala.Cr.App.), writ denied,405 So.2d 962 (Ala. 1981).
Following the establishment of probable cause to support the warrant, the judge issued a search warrant in compliance with Alabama law. See § 15-5-1 through § 15-5-6, Code of Alabama
(1975).
AFFIRMED.
All Judges concur.