Appellant Earnest Meadows was convicted after a jury trial of unlawful possession of marijuana for purposes of trafficking therein, a violation of § 20-2-80, Code of Alabama 1975 (now codified at § 13A-12-231, Code of Alabama 1975). He was subsequently sentenced to five years in prison and was fined $25,000.
The evidence at trial tended to show that a state pilot, employed by the Alabama Bureau of Investigation, observed what appeared to be marijuana growing on property owned by the appellant. Thereafter, a ground search of his property was conducted. The search revealed 113 marijuana plants growing in nine plots. These plants ranged in size from approximately one foot to seven feet tall. The street value of the plants was estimated to be $92,000. Also located in the area where the marijuana was found growing was an underground greenhouse, equipped with a watering system whereby water was pumped into the greenhouse using PCV pipe. The greenhouse was also supplied with an electrical lighting system. Appellant's defense was based on his lack of knowledge of the existence of the marijuana.
 I
The appellant first contends that the trial court erred when it failed to direct a verdict for him because, he says, the evidence presented by the state was insufficient to show constructive possession.
To prove constructive possession, the state must show: " '(1) actual or potential physical control (2) intention to exercise dominion and (3) external manifestations of intent and control.' " White v. State, 479 So.2d 1368, 1376
(Ala.Cr.App. 1985), quoting Franklin v. State, 437 So.2d 609,611 (Ala.Cr.App. 1983). In addition, the State must also show that the defendant had knowledge of the existence of the controlled substance. See White. "An inference of constructive possession arises when the controlled substance is found on the premises owned or controlled by the accused." Donahoo v. State,505 So.2d 1067, 1070 (Ala.Cr.App. 1986).
In this case, evidence of appellant's ownership of the property where the marijuana was found included: (1) the fact that deeds from the county probate office showing that the land was deeded to the appellant *Page 955 
and his wife, (2) the fact that the appellant gave other persons permission to enter the property, (3) the fact that the appellant had signed an F.H.A. note secured by the property and, (4) the fact that the appellant's small tractor was found on the property. The state also presented additional evidence of ownership of the property at trial.
As stated above, the State must show that the appellant had knowledge of the controlled substance. This court held inDonahoo, id. at 1070, "Guilty knowledge is invariably proved by circumstantial evidence. . . . It may be proved by evidence of acts, or conduct of the accused, from which it may be fairly inferred that he knew of the existence of the contraband at the place where it was found." As correctly stated in the State's brief, evidence of the appellant's guilty knowledge included, in part, the following:
"The defendant visited the property frequently;
 "The defendant had purchased pipes like those found near the pumps and a hose like that found near the marijuana plants;
 "A reducer was found near some of the plants and could be used to connect the hose to the pipe and water pumps;
 "A water pump borrowed by the defendant was found, mounted to a trailer and thereby mobile, on the property;
 "Young marijuana plants were found growing in a tray very near the house;
 "Cotton mote was seen in some of the soil in which the marijuana plants were grown;
 "Defendant was seen bringing cotton mote on the property;
 "Areas very near to and including some of the areas growing the marijuana had been cultivated with a disk or harrow;
 "The defendant had a tractor on the property and also cultivation tools including a disk or harrow;
 "Fifteen miles from this property near defendant's garden, across the road from defendant's house another marijuana plot was found;
 "Also near the garden marijuana was found growing in pots like those found during the drug bust on defendant's property; and
 "The marijuana found near the garden was cultivated and grown like the marijuana grown on the property."
It is clear from the record, that the State produced sufficient evidence to show constructive possession. The trial court correctly submitted the question to the jury for its determination.
 II
The appellant next contends that the trial court erred by allowing the introduction into evidence of a statement made by the appellant which contained references to a collateral and different case against him.
During the course of the appellant's trial, a statement made by him to Officer Payne of the Tallapoosa County Sheriff's Department was received into evidence. The statement was made when the appellant voluntarily came into the sheriff's office to discuss the marijuana found on his property. The statement was introduced by the State and was read to the jury in open court by Officer Payne. The portion of the statement objected to was as follows: "Sheriff Smith told me that they had found some marijuana plants in front ofmy house where I live in Reeltown." (Emphasis added.)
The appellant argues that he was not on trial for the marijuana found growing across the road from his house in Reeltown. The appellant contends that he was on trial for a separate offense, i.e., growing marijuana on his farm approximately 15 miles from his residence in Reeltown. He further contends that he does not own the property in Reeltown where the marijuana was found growing and that no evidence was offered that he had ever seen the marijuana at the Reeltown location. However, evidence at trial tended to establish that the plants grown at the Reeltown location were grown like those found during the drug raid on the appellant's farm. Further, similar potting materials were used at both locations and the watering systems *Page 956 
were alike. The State contends that while it is true that the appellant did not own the Reeltown property where the Reeltown marijuana was found, he did, in fact maintain a garden on that property very near where the marijuana plants were found growing.
The law of this state clearly allows the introduction into evidence of similar acts by the defendant to prove modus operandi, or intent. Our Supreme Court has held inJohnson v. State, 335 So.2d 663, 673 (Ala.Cr.App.), cert. denied, 335 So.2d 678 (Ala. 1976), cert. denied, 429 U.S. 1026,97 S.Ct. 649, 50 L.Ed.2d 629 (1976):
 "It is a well-established principle that evidence of other or collateral crimes is not admissible as substantive evidence to establish the guilt of an accused of a particular crime. To this well-established rule, there are several equally well-established exceptions. Wharton's Criminal Evidence, § 31, lists them as follows:
 " 'These exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws.'
 "See Murphy v. State, 52 Ala. App. 490, 294 So.2d 457; Brasher v. State, 33 Ala. App. 13, 30 So.2d 26, cert. denied, 249 Ala. 96, 30 So.2d 31." (emphasis added).
See also C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977).
In the case now before us, marijuana was found on the appellant's farm property. Another patch of marijuana was found growing 15 miles from this area. This second patch was a short distance across the road from the appellant's residence. While it is true that the appellant did not own the property across from his home in Reeltown where this second patch of marijuana was found, the method for growing the plants, the equipment used, and the supplies found at both locations were substantially the same. Further, the fact that the appellant was "raising a garden" on the Reeltown property shows that he was exercising some dominion and control over that property. Thus, we consider that the proximity of the Reeltown marijuana patch to the appellant's house and the presence of the appellant's vegetable garden adjacent to that marijuana patch, coupled with the evidence that similar materials and growing techniques used at both marijuana patches, all went to prove the appellant's knowledge of the existence of the larger patch of marijuana located on his farm property 15 miles away. Thus, evidence of the collateral offense was correctly received into evidence.
 III
The appellant next contends that the trial court erred by allowing the introduction of evidence that he had purchased PCV pipe. The appellant argues that that evidence was discovered as a result of an illegal search.
Specifically, the appellant argues that the owner of the Notasulga Hardware Store should not have been allowed to testify as to the purchases made by the appellant of certain materials (PCV pipe) which were found on the property where the marijuana was found growing. He contends that the identity of the owner of the hardware store, a Mr. Garner, was discovered through a receipt from his store which was illegally seized from the appellant's residence.
Officer Charles West testified at trial that information obtained from the receipt was not used in locating Mr. Garner, the *Page 957 
owner of the store where the appellant had purchased the pipe used in the marijuana growing operation. West testified that when he went to Notasulga, which is 10 to 15 miles from the appellant's home, he met with a Mr. Abbett. Abbett directed him to two local hardware stores. West further testified that the owner of the first hardware store he checked told him that he had never sold anything to the appellant. This owner also advised Officer West that the appellant's daughter worked at the other hardware store, owned by Mr. Garner.
West testified that even had he not seen the receipt he would have contacted all local hardware stores in the ordinary course of the investigation concerning the source of the PCV pipe and other materials.
In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501,81 L.Ed.2d 377 (1984), the United States Supreme Court held that the exclusionary rule does not apply where evidence is discovered through an illegal search but would inevitably have been discovered by lawful means. It must be established by a preponderance of the evidence that ultimately or inevitably the information would have been discovered by lawful means. Nix, supra, 104 S.Ct. at 2508-09. Here, the officer testified at trial that he did not use any information from the receipt in locating the witness, Mr. Garner. He testified that he first went to the wrong hardware store and was then directed to Mr. Garner's store by the owner of the first store. Mr. Garner's store turned out to be the store where the appellant had, in fact, bought the PCV pipe found on his property. Mr. Garner testified at trial as a State's witness.
 "The greater the willingness of the witness to freely testify, the greater the likelihood that he or she will be discovered by legal means and, concomitantly, the smaller the incentive to conduct an illegal search to discover the witness. Witnesses are not like guns or documents which remain hidden from view until one turns over a sofa or opens a filing cabinet. Witnesses can, and often do, come forward and offer evidence entirely of their own volition. And evaluated properly, the degree of free will necessary to dissipate the taint will very likely be found more often in the case of live-witness testimony than other kinds of evidence. . . . . [T]he exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object. . . . . The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized."
United States v. Ceccolini, 435 U.S. 268, 276-284,98 S.Ct. 1054, 1060-64, 55 L.Ed.2d 268 (1978).
In Ceccolini, the United States Supreme Court considered an issue similar to the one here. In that case, a witness was allowed to testify over objections that his testimony was tainted by the fact that the witness's identity was discovered through illegally obtained evidence. The court reasoned that the "degree of attenuation" between the illegal search and the testimony of the witness was enough to remove any taint of the "fruit of the poisonous tree" from his testimony. Here, as inCeccolini, the illegally obtained evidence was not introduced into evidence nor was it used in any way in the questioning of Mr. Garner, owner of the hardware store.
Judge Patterson, writing for this court in Hornsby v. State,517 So.2d 631 (Ala.Cr.App.), writ denied, 517 So.2d 639
(Ala. 1987), cert. denied, 485 U.S. 961, 108 S.Ct. 1224,99 L.Ed.2d 425 (1988), stated:
 "The dispositive issue is whether, granting establishment of the primary illegality, the evidence sought to be suppressed was gathered 'by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441
(1963)."
We believe that Mr. Garner would inevitably have been discovered by authorities and called as a witness for the State, with *Page 958 
or without the fruit of the illegal search. Thus, the owner of the hardware store, Mr. Garner, was correctly allowed to testify concerning the appellant's purchase of the PCV pipe from his store.
For the above-stated reasons, the judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.