[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1014 
The appellant, Nancy Breckenridge, was indicted on November 8, 1991, in Jefferson County, for the capital offense of murder committed during a kidnapping in the first degree, in violation of § 13A-5-40(a)(1), Code of Alabama 1975. The indictment reads, in part, as follows:
 "NANCY BRECKENRIDGE . . . did intentionally cause the death of Pamellia Higginbotham by suffocating or strangling her with tape, a scarf, her hands or by means otherwise unknown, and NANCY BRECKENRIDGE . . . caused said death during NANCY BRECKENRIDGE['S] . . . abduction of, or attempt to abduct, Pamellia Higginbotham with intent to inflict physical injury upon her, in violation of Section 13A-5-40(a)(1) of the Alabama Criminal Code. . . ."
At arraignment, on December 17, 1991, the appellant pleaded not guilty. On March 20, 1992, a jury found her guilty of the capital offense charged in the indictment. A sentencing hearing was held before the jury, in accordance with §§13A-5-43 through -46, and the jury returned an advisory verdict recommending by unanimous vote life imprisonment without the possibility of parole. Thereafter, the trial court held another sentencing hearing, in accordance with §§ 13A-5-47 through -52, and, after weighing the aggravating and mitigating circumstances and considering the jury's recommendation, the trial court sentenced Breckenridge to life imprisonment without the possibility of parole.
The state's evidence shows the following. In approximately 1980, Pamellia Higginbotham (hereinafter referred to as "the victim") married Ray Higginbotham. Three children were born of the marriage. In July 1990, they divorced, and the victim moved out of the family home, which was near Calera in Shelby County. Two of the children stayed with Ray, and the other child was placed with a relative in Mississippi. Ray had a son by a previous marriage, R.H., who at the time of the divorce was 17 years of age and resided in the family home. He remained with Ray when the parties divorced. Shortly after the divorce, Ray met *Page 1015 
the appellant. They saw each other frequently, and there was talk of marriage.
Then the victim moved back into the house with Ray. This caused problems between Ray and the appellant. The appellant did not want the victim living with Ray. The appellant persuaded R.H. and his 19-year-old friend, Eugene Brasher, to assist her in kidnapping the victim and in bringing the victim to her. She told them that she would leave a garbage bag beside a garbage dumpster at a certain location and that, in the garbage bag, they would find duct tape to bind the victim. R.H. and Brasher located the garbage bag containing the duct tape as the appellant said they would.
On December 16, 1990, R.H. and Brasher seized the victim in the Higginbotham home, bound and gagged her with the duct tape that had been furnished by the appellant, put her in Brasher's automobile, and delivered her to the appellant at a prearranged site in a rural area near Calera in Shelby County. When R.H. and Brasher arrived with the victim, the appellant used a syringe to inject an unidentified substance[1] into the victim's arm and neck. She then began strangling the victim, using her hands and then a red scarf. Having difficulty, the appellant asked Brasher to assist her. Brasher claimed that he refused; however, R.H. testified that he saw both Brasher and the appellant choking the victim. Brasher then placed the victim in the trunk of the appellant's automobile, along with her shoes, her purse, and the garbage bag, and the appellant drove away.
On January 15, 1991, the body of the victim was discovered in an isolated rural area of Jefferson County. An autopsy revealed that the victim died either from asphyxiation or strangulation.
R.H. and Brasher confessed to their part in the crime and testified at trial against the appellant.[2] However, the appellant, in her testimony, denied any part in the commission of the crime. She attempted to place the blame on R.H. and Brasher by testifying that, on the day of the victim's disappearance, as she was traveling from Calera to Birmingham, she observed Brasher's car parked on an exit ramp of the interstate highway. She testified that she stopped, thinking that they had car trouble, and that they showed her the beaten, bound, and gagged victim lying in the back of Brasher's automobile. She stated that R.H. and Brasher asked her to help them and that she refused and drove away toward Birmingham.
The appellant raises five issues on appeal.
 I.
The appellant first contends that the trial court erred in denying her motion to quash the indictment. She argues that the indictment was vague and ambiguous and that it failed to properly apprise her of the charges against her.
Rule 13.2(a), A.R.Cr.P., provides:
 "The indictment or information shall be a plain, concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment."
Rule 13.2(a) mirrors the requirement of § 15-8-25, Code of Alabama 1975. An indictment is sufficient if it substantially follows the language of the statute violated, provided the statute prescribes with definitiveness the elements of the offense. Ex parte Allred, 393 So.2d 1030 (Ala. 1981). An indictment must allege all the elements of the offense charged and must also sufficiently apprise the accused of what he or she must be prepared to defend against. Hewlett *Page 1016 v. State, 520 So.2d 200 (Ala.Cr.App. 1987), cert. denied,520 So.2d 200 (Ala. 1987).
In this case, the indictment is clear, concise, and understandable. It charges murder of the victim by the defendant during a kidnapping in the first degree. The essential elements of the capital offense are averred in the indictment, and the indictment parallels the language of § 13A-5-40(a)(1). It states sufficient facts to enable the appellant to understand the nature of the crime charged and the particular acts against which she would have to be prepared to defend.
The appellant seems to contend that, because, she says, only a murder charge was presented to the grand jury, her prosecution under an indictment charging murder occurring during a kidnapping was a denial of due process. We consider her underlying premise — that only a murder charge was presented to the grand jury — to be faulty. She cites Talleyv. City of Clanton, 495 So.2d 1165 (Ala.Cr.App. 1986), as authority for her contention. The appellant was initially charged with murder when she was arrested; however, as the record clearly shows, the grand jury returned a true bill against the appellant for the capital offense of murder committed during the course of a kidnapping. It is apparent from the face of the indictment that the grand jury had evidence before it to support this indictment. An indictment should be sufficiently specific to identify the accusation or charge in order that the accused not be tried for an offense different from that intended by the grand jury. Gayden v.State, 38 Ala. App. 39, 80 So.2d 495 (1954). Here, the indictment is sufficiently specific to identify the murder-kidnapping capital offense as the crime intended by the grand jury to be charged.
We find that the indictment in the instant case was sufficient, and, therefore, we hold that the trial court correctly denied the appellant's motion to quash the indictment.
 II.
The appellant next contends that the trial court erred in failing to charge the jury on the lesser included offenses of manslaughter and kidnapping in the first and second degrees. The issue was properly preserved for review by timely objection. The trial court refused to charge the jury, as requested, on the ground that there was no rational basis in the evidence presented to support such instructions. The trial court correctly instructed the jury on the elements of the capital offense charged in the indictment, i.e., murder committed by the defendant during a kidnapping in the first degree, § 13A-5-40(a)(1), which included the elements of the component crimes of the charge, i.e., murder, § 13A-6-2(a)(1), and kidnapping in the first degree, § 13A-6-43(a)(4). The trial court also instructed the jury on one lesser included offense, i.e., felony murder, § 13A-6-2(a)(3).
A defendant accused of a greater offense is entitled to have the trial court charge on any lesser included offense if there is any reasonable theory from the evidence to support the lesser charge, regardless of whether the state or the defendant offers the evidence. Ex parte Pruitt, 457 So.2d 456
(Ala. 1984); Parker v. State, 581 So.2d 1211 (Ala.Cr.App. 1990), cert. denied, 581 So.2d 1216 (Ala. 1991). A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury. Anderson v. State,507 So.2d 580 (Ala.Cr.App. 1987). " '[E]very accused is entitled to have charges given which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.' " Ex parte Stork, 475 So.2d 623, 625 (Ala. 1985) (quoting Ex parte Chavers, 361 So.2d 1106, 1107 (Ala. 1978). Section 13A-1-9(b) provides, "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
The question before us is whether there was any evidence to have supported any reasonable theory by which the appellant could be found guilty of manslaughter or of kidnapping in the first or second degree alone. A *Page 1017 
person commits the crime of manslaughter if he causes the death of another person recklessly or as a result of a sudden heat of passion resulting from legal provocation. § 13A-6-3. A person commits the crime of kidnapping in the first degree, under the statutory alternative even remotely pertinent here, if he abducts another person with intent to accomplish or aid in the commission of any felony or flight therefrom, or to inflict physical injury upon that person or to terrorize him or a third person. § 13A-6-43. A person commits the crime of kidnapping in the second degree if he abducts another person. §§ 13A-6-44(a)(3), -44(a)(4), and -44(a)(5).
In this case, the appellant offered no evidence to support a theory that she could have been found guilty of manslaughter or of kidnapping in the first or second degree, only. In fact, she denied any participation in the murder or the kidnapping, a position inconsistent with her request for instructions on these lesser included offenses. The state's evidence, on the other hand, showed that the appellant instigated and planned the commission of the crime; that she assisted R.H. and Brasher in kidnapping the victim by furnishing the duct tape used to bind and gag the victim; and that immediately upon delivery of the victim to the appellant, she injected the victim with an unidentified substance and strangled her in the presence of R.H. and Brasher. There was no evidence in this case supporting a reasonable theory that would support a finding that the appellant was guilty of manslaughter. Likewise, there is no evidence to support a reasonable theory would support a finding that she was guilty only of kidnapping in either the first or second degree. Under the facts presented, the appellant either was guilty of the capital crime charged or she was innocent. When the evidence clearly shows the appellant either is guilty of the offense charged or is innocent, the charge on a lesser included offense is not necessary or proper. Perry v. State, 455 So.2d 999 (Ala.Cr.App. 1984). We find no possible evidence which would have supported instructions on the lesser included offenses of manslaughter and kidnapping in the first and second degrees.
 III.
The appellant contends that the trial court erred in its instructions to the jury on the lesser included offense of felony murder. She contends that the trial court failed to instruct the jury on the intent element of that offense and on the application of accomplice liability to that offense.
After the trial court's oral charge to the jury, in the guilt phase of the trial, the appellant raised certain objections to the charge. The record in this regard shows the following:
 "[THE COURT]: Are there any exceptions to the Court's charges?
"MR. CHRIST [defense counsel]: Yes, Your Honor.
 "MR. STOKESBERRY [prosecuting attorney]: Not by the prosecution, Your Honor.
". . . .
"THE COURT: All right. Mr. Christ.
 "MR. CHRIST: Yes, sir. If it please the Court, as to the charges . . . we would make the exception to the lesser included offense of the Court failing to bring the case down to manslaughter.
 "We also make exception in that the charge of kidnapping was not addressed to the jury.
 "We further make exception, Your Honor, to the accomplice statute — I mean the accomplice charge where the Court failed to make a significant distinction between a felony murder doctrine and accomplice liability in that the accomplice liability requires a greater showing of the defendant's individual intent. . . .
 "THE COURT: As I understand, you're asking the Court to give a lesser included offense of manslaughter; is that right?
 "MR. CHRIST: Manslaughter and kidnapping, Your Honor.
. . . . .
"THE COURT: Kidnapping in what, first degree?
 "MR. CHRIST: Kidnapping, second and kidnapping, first.
 "THE COURT: Well, the Court has given considerable thought to all the possible *Page 1018 
lesser included offenses, and after such consideration finds no rational basis for giving those offenses based on the facts of the evidence as presented by the state in this case. Anything else?
 "MR. CHRIST: Also, another aspect, Judge. And maybe I'm wrong. Did you talk on the character evidence in this matter?
"THE COURT: I charged on character evidence.
 "MR. CHRIST: All right. Thank you, sir. I might have missed that.
"THE COURT: Anything else?
"MR. CHRIST: No, sir, Your Honor, at this time."
It is clear from the record that the appellant obtained an adverse ruling on her request for instructions on the lesser included offenses of manslaughter and kidnapping in the first and second degrees; however, she did not obtain an adverse ruling from the court on her objection to the trial court's felony murder and accomplice liability instructions. This court may review only those matters on which adverse rulings have been made in the trial court. " 'In the absence of a ruling, a request for a ruling or objection to the court's failure to rule, there is nothing preserved for appellate review.' " Johnson v. State, 542 So.2d 341, 345 (Ala.Cr.App. 1989) (quoting Moore v. State, 457 So.2d 981, 988 (Ala.Cr.App. 1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757,84 L.Ed.2d 820 (1985)).
Thus, this issue is procedurally barred from our review because the appellant failed to obtain an adverse ruling in the lower court.
 IV.
The appellant contends that the state failed to prove a prima facie case of murder committed during a kidnapping in the first degree as charged in the indictment. This issue is preserved for review by the trial court's denial of the appellant's timely motion for a judgment of acquittal made at the conclusion of the state's case-in-chief. She argues that the state failed to produce evidence connecting her to the kidnapping and to the murder of the victim.
In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied,387 So.2d 283 (Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State,363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State,447 So.2d 199 (Ala.Cr.App. 1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676,220 So.2d 843 (1969); Willis v. State. A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Duncan v. State, 436 So.2d 883
(Ala.Cr.App. 1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720,79 L.Ed.2d 182 (1984); Johnson v. State, 378 So.2d 1164
(Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979).
In reviewing the evidence presented by the state in the instant case in the light of the legal principles set out above, we find that the evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that the appellant was guilty of the capital offense charged in the indictment. Accomplices R.H. and Brasher, testifying for the state, implicated the appellant in the kidnapping *Page 1019 
and murder. Their testimony was corroborated by other evidence tending to connect the appellant with the commission of the crime. The following fibers matched fibers from the spare tire cover in the trunk of the appellant's automobile: a fiber found on a sock that the victim was wearing at the time of her abduction; a fiber found on the duct tape around the victim's ankles; and six fibers found on the duct tape around the victim's waist. Numerous fibers found on the victim's clothing and on the duct tape around her waist were identical to fibers from the carpet in Brasher's automobile. Red fibers from some type of woven material were found in the victim's hair and on her body. (The testimony did not affirmatively prove that these fibers were from the red scarf used to strangle the victim; however, such a conclusion could have been reasonably inferred by the jury.) Duct tape of the same type used to bind the victim was found hidden in the appellant's home. A receipt stuck to a Coca-Cola can found in the garbage bag that was attached to the victim's body when it was discovered was traced to the building where the appellant was employed. An injury to the victim's neck was consistent with the type of injury one would sustain if injected with a syringe.
Clearly, the state proved a prima facie case of the capital offense charged. Thus, the denial of the appellant's motion for a judgment of acquittal was proper.
 V.
The appellant contends that the trial court erred in denying her motion to suppress statements made by her to the police and the evidence seized as a result of searches conducted pursuant to search warrants issued for the search of her home and automobile.
On January 18, 1991, three days after the discovery of the victim's body, the appellant was interviewed by an investigator at the sheriff's office. At that time, all persons who could possibly have information about the crime were being interviewed. She was accompanied by her attorney, and the interview lasted about one and one-half hours. At the time, the appellant was not a suspect, was not in custody, and was not given Miranda warnings. Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The victim's husband, Ray Higginbotham, was the prime suspect at the time, and the questioning of the appellant concerned primarily her relationship with Ray Higginbotham. She offered no information pertaining to the crime, but she did offer her assistance in the investigation.
On January 25, 1991, the appellant telephoned the investigator she had spoken to and told him that she wanted to come in and give information that might assist in the investigation. She came to the sheriff's office alone and gave the investigators a list of persons who she claimed had motives for killing the victim. She did not include R.H. and Brasher on her list. She again offered her assistance in the investigation.
On January 31, 1991, two investigators visited the appellant at her home. Her grandmother and her daughter were present. The investigators asked her if she had any duct tape in her home that might be of the type found on the victim's body, and they asked her if she would be willing to give them a hair sample. She stated that there usually was duct tape in her home and that she would look for it, that she would be willing to give a hair sample, and that she had nothing to hide. However, she never produced any duct tape and she did not give a hair sample. During this visit, the appellant was not in custody, no Miranda warnings were given, and Ray Higginbotham was still considered the "prime suspect."
On February 14, 1991, the appellant contacted Lieutenant Linn Moore, one of the investigators in the sheriff's office, and said that she wanted to come in and talk. She came to the sheriff's office accompanied by her attorney. The interview lasted about two hours and was tape-recorded with the appellant's knowledge. According to Moore, by this time, the appellant had become a suspect. During this interview, she told Moore that she had met and talked with the victim the day before the victim's disappearance, and that on the date of the victim's disappearance, she saw the beaten, bound, and gagged victim lying in the back of Brasher's automobile, which she said was parked *Page 1020 
on the ramp of Interstate Highway 65 at the Alabaster exit. She also told Moore that R.H. and Brasher had subsequently come to her home, that they had taken her automobile and a credit card, and that she was afraid of them.
The appellant contends that her statements to the investigators were obtained in violation of her rights under the Fifth and Fourteenth Amendments to the Constitution of the United States. She argues that they were obtained by coercion and without Miranda warnings and that they were therefore involuntary.[3] Miranda warnings are required only when a suspect is both in custody and subjected to interrogation.384 U.S. at 477-78, 86 S.Ct. at 1629-30. It is clear in this case that the appellant was not in custody at any time during the four interviews she had with the investigators. There was no significant deprivation of her freedom of action. The interview in her home, which she particularly complains about, was politely conducted, she was not compelled to answer questions, and she could have terminated the interview at any time. In fact, the interview was terminated by the appellant's grandmother.
Moreover, the record shows that the statements made by the appellant during the four interviews were completely volunteered and made under circumstances and in an atmosphere totally devoid of coercion or any compelling influences. No presumption of coercion could conceivably arise under the circumstances presented here.
The appellant contends that the search warrants issued for the search of her home and automobile were defective because, she says, they were based entirely on hearsay. There is no merit in this contention. The record shows that the information upon which the affidavit and search warrants were based was the confession of accomplice R.H. and other facts developed during the investigation that were within the personal knowledge of the affiant. The information furnished by R.H. and the other information was sufficient for the issuing magistrate to find probable cause for the search. The search meets the totality-of-the-circumstances test for determining probable cause of Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). See Jackson v. State,534 So.2d 689 (Ala.Cr.App. 1988).
For the above reasons, the trial court's denial of the appellant's motion to suppress her statements and the evidence seized in the search of her home and automobile was proper.
Having addressed all issues raised by the appellant on appeal, and finding no merit in them, we affirm the judgment of the trial court.
AFFIRMED.
McMILLAN and MONTIEL, JJ., concur.
TAYLOR, J., dissents with opinion.
BOWEN, J., joins in the dissent.
[1] Although the identity of this substance was not proven, the autopsy of the victim showed the presence of phenobarbital in her blood.
[2] In exchange for R.H.'s testimony, the state agreed not to move to transfer his case to circuit court where he would be tried as an adult, but agreed that it would pursue his case in the juvenile system. In return for Brasher's testimony, the state agreed to dismiss the murder charge pending against him, allow him to plead guilty to kidnapping in the second degree and to receive a 13-year sentence, and recommend probation with the understanding that the state's recommendation on probation would not be binding upon the trial court.
[3] We note that the appellant's statements are exculpatory; however, Miranda makes no distinction between inculpatory and exculpatory statements. Miranda v. Arizona, 384 U.S. at 477,86 S.Ct. at 1629.