BASCHAB, Judge.
The appellant, Timothy Wayne Dutton, was convicted of one count of second-degree burglary, a violation of § 13A-7-6(b), Ala.Code 1975; one count of third-degree burglary, a violation of § 13A-7-7, Ala. Code 1975; and one count of unlawfully breaking and entering a vehicle, a violation of § 13A-8-ll(b), Ala.Code 1975.[1] The trial court sentenced him, as a habitual offender, to serve concurrent terms of ten years in prison on the third-degree burglary and unlawfully breaking and entering a vehicle convictions and fifteen years and one day in prison on the second-degree burglary conviction. See § 13A-5-9(a), Ala.Code 1975. It then split his sentence on the second-degree burglary conviction and ordered him to serve five years in prison followed by three years on supervised probation. The appellant filed a motion for a new trial, which the trial court summarily denied. This appeal followed.
In an unpublished memorandum released today, we affirmed the appellant’s convictions for second-degree burglary and unlawfully breaking and entering a vehicle. See Dutton v. State, (CR-01-0938, October 25, 2002) — So.2d - (Ala.Crim.App.2002) (table). In this opinion, we address the sufficiency of the evidence to support the appellant’s conviction for third-degree burglary.
*843 The appellant argues that the State did not present sufficient evidence to support his third-degree burglary conviction. (Issue III in the appellant’s brief.)
“A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.”
§ 13A-7-7(a), Ala.Code 1975.
“In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State.”
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
The State presented evidence that, around 10:00 p.m. on April 7, 2001, Jay Robert Wilson came home and found that someone had broken into his house. Wilson testified that every door in the house had “jimmy marks to where [someone had] stuck a screwdriver in and [tried] to pry it open” and that the rubber shielding around the doors had been pulled away. (R. 42.) A laptop computer, some I.S.O. readers, and a satellite card, all of which belonged to some of his friends, had been stolen. Wilson telephoned law enforcement authorities and reported the burglary. When law enforcement officers asked if he suspected anyone, he gave them the appellant’s name. Wilson testified that he suspected him because he had previously worked with and supervised the appellant at World Link; that, while the appellant was working at World Link, things had disappeared from everywhere the appellant had been; and that he had “let [the appellant] go for some ... quality control reasons” and because little things had disappeared around work sites. (R. 41.)
The day after the burglary, Wilson, his father, and his brother went to Steve Tef-teller’s house. Tefteller had worked with Wilson as a subcontractor and had worked with the appellant. Wilson told Tefteller that his house had been broken into, that he believed the appellant had done it, and to put the word out that he was going to find his equipment.
A few days later, between 6:00 and 8:00 p.m., the appellant telephoned Wilson and asked why he was “sicking the law on him.” (R. 48.) Wilson said that it was because he had stolen his property, and the appellant repeatedly denied that he had stolen anything from Wilson. The appellant asked Wilson what was missing, and Wilson told him. The appellant said *844 he did not take Wilson’s property and that, if that was what Wilson was upset about, he would get him a laptop. Wilson told the appellant that he did not want a new laptop and that he wanted his property back. The appellant told him that he did not take his property, but stated that he would help him find it.
About ten minutes after Wilson’s telephone conversation with the appellant, Wilson received a telephone call from an unknown person, who told him he was accusing the wrong person and that his equipment was behind the BP gas station on Highway 24. Wilson testified that he had caller ID, that he tried to call that telephone number back, and that the number would not accept incoming telephone calls. He also stated that, because he thought that the telephone call might have been an attempt to lure him away from his house, he radioed Robbie Letson and asked him to go to the gas station and look behind the dumpster for his equipment. Letson went to a gas station, but radioed Wilson and told him the property was not there.
Shortly thereafter, the appellant telephoned Wilson and asked him if he had found his property. Wilson said that he had not and that he had gone to the wrong gas station. The appellant then said, “ T don’t know for sure, but did you check the BP up on 24?’ ” (R. 54.) Wilson told him that he had sent Letson to the Texaco on Moulton Road, and the appellant said, “ Well, are you sure you were at the right one?’ ” (R. 55.) Wilson asked Letson to go to the BP gas station, and he then telephoned the Decatur Police Department. Before law enforcement officers arrived, Letson went to the gas station, radioed Wilson, retrieved a bag, and took the bag to Wilson. The laptop computer and the programmers were in the bag, but the satellite card was not.
Wilson testified that, when the appellant first telephoned him, he had not told him about the anonymous telephone call he had received; that the appellant already knew about the telephone call; that the appellant asked him if he had found his property; and that the appellant subsequently directed him to the right gas station. He also stated that, while the law enforcement officers were there, the appellant telephoned him and asked him if he had gotten his stuff back. Wilson told him that he had. At that time, the officer’s radio beeped, and the appellant asked him who was there. The appellant then said he was going to bed.
We agree with the appellant’s assertion that the State did not present sufficient evidence to show that he knowingly entered Wilson’s house with the intent to commit a crime therein. Therefore, we reverse the appellant’s conviction for third-degree burglary and render a judgment for the appellant.
AFFIRMED BY MEMORANDUM IN PART; REVERSED AND JUDGMENT RENDERED IN PART. 
McMILLAN, P.J., and COBB and SHAW, JJ., concur; WISE, J., concurs in the memorandum and dissents from the opinion.

. The second-degree burglary conviction arose from the April 30, 2001, burglary of Kevin and Lucinda Burchel’s home. The third-degree burglary conviction arose from the April 7, 2001, burglary of Jay Wilson's home. The unlawfully breaking and entering a vehicle conviction arose from the January 30, 2001, breaking and entering of Kevin Bur-chel's 1996 Dodge truck.