WELCH, Judge.
On March 25, 2013, the Juvenile Court of Houston County held a delinquency hearing in the matter of W.C.M. After an ore tenus hearing, W.C.M. was adjudicated a delinquent child for the offense of first-degree criminal mischief. The juvenile court sentenced W.C.M. to probation in his *1281 parents’ custody and ordered him to pay the victim $2,822.94 in restitution.

Facts

H.R., W.C.M., G.T., J.A.1[1] and J.A.2, T.G., and B.M. are teenage boys who, except for the victim, H.R., live in the same neighborhood. (R. 113.) They are friends who attend school and church together. (R. 29.) On July 12, 2012, this group of friends was hanging out together. The victim, H.R., had a black 2003 Hyundai Tiburón automobile parked at the curb. (R. 13, 83.) The boys made milkshakes at two of their homes, then decided to go ride the “Mule,” a multi-passenger ATV owned by B.M. (R. 66, 70.) Some of the boys walked over to B.M.’s house, but H.R. drove his car over. (R. 13.) Only five of the boys could fit in the Mule, so W.C.M. stayed behind and got in H.R.’s ear. (R. 13.) H.R. told W.C.M. not sit in the car because he did not want him in the car with a milkshake. (R. 13.) W.C.M. complied, but as the boys drove off in the Mule, H.R. saw W.C.M. standing by the front passenger side of his car. H.R. testified that as the Mule got about 50 yards away, he watched W.C.M. “flop” on the hood of H.R.’s car. (R. 13, 20.) H.R. saw W.C.M. do it only once. (R. 21.) H.R. stated what he meant by “flop” was that W.C.M. stood by the right front wheel well and jumped up on the hood. (R. 20.) When the boys returned on the mule 10-15 minutes later, H.R. saw three small dents on the hood, and a large dent on the roof above the passenger door. (R. 16.) H.R. testified that those dents were not there before he left on the Mule, but he did not see W.C.M. jump onto the roof. (R. 18, 21.)
H.R. testified that he did not think W.C.M. was angry when he told him to get out of his car, nor was there an argument, although H.R. admitted that he was “kind of firm and assertive.” (R. 36.) H.R. got an estimate of $2,800 to repair the damage. (R. 22.) H.R. did not know how the roof got damaged, because he saw W.C.M. “flop” onto the hood only once before the Mule was out of visual range. (R. 25, 26.) H.R. stated: “I think, if anything, it would have been more of an accident. But I don’t think he would purposely just damage my car.” (R. 31.) When H.R. returned and saw all the damage, he “blew up” at W.C.M., but later told him he was sorry he did that. (R. 30.)
State’s witnesses, J.A.1, J.A.2, and B.M., and one of W.C.M.’s witnesses, T.G., all confirmed that the car was not damaged when they left on the Mule, but was damaged when they got back about 10 minutes later. J.A.1 stated: “Before we left to ride the Mule, there was, I don’t really remember all the details of it, but [H.R.] told [W.C.M.] to get out of his car, and then they were arguing about who was going to ride because there was only one seat left on the Mule.” (R. 44.) J.A.1 stated that after W.C.M. jumped on the hood, “He was sitting on it to the point that his feet were off the ground, like pretty far back on it. But I didn’t see him like stand up on the hood. But I just saw him sit on it.” (R. 43.) He said that he did not think W.C.M.’s jump onto the hood would damage the car. (R. 48.) J.A.1 stated he told W.C.M.’s father that he saw no damage to the roof that W.C.M. had done. (R. 45.) J.A.1 testified that W.C.M. had gone home (he lived just across the street) before they all returned but that he came back from his house when H.R. telephoned him. (R. 48, 49.)
J.A.2 testified that W.C.M. put his milkshake on J.A.l’s car before going over *1282 to H.R.’s car and “flopping” on it. (R. 54.) He explained that “flopping” meant, “like kind of hopped up and sat on the hood.” (R. 58.) When the boys returned, the milkshake was still on the roof of J.A.l’s ear. (R. 61.) He stated there were no dents in H.R.’s car when they left but that there were dents when the boys returned. (R. 55.) B.M. confirmed that H.R.’s car was undamaged when the boys left on the Mule but that the damage was “very noticeable” when they returned. (R. 66-69.) He also stated that he didn’t think W.C.M. meant to do it on purpose. B.M., the owner of the Mule, confirmed what the other State’s witnesses had to say, including that he thought the damage was not intentional. (R. 75, 77.) H.R.’s stepfather, Charles Wynkoop, testified that the damage was not there before this incident or H.R. would have noticed and told him. According to Wynkoop, H.R. washes the car each weekend so he definitely would have noticed. (R. 82.) Wynkoop took pictures of the damage, and the photographs were admitted into evidence. (R. 81, 18.)
At the close of the State’s evidence, W.C.M. made a motion to dismiss for the State’s failure to prove that he had the intent to cause damage to the vehicle. The juvenile court denied the motion, and stated:
“I’ll take into consideration the testimony from the witnesses that the damage was accidental. They did all testify to that. I guess ultimately that’s my decision I have to make based on all of the evidence. But I’ll deny the motion at this time. There is circumstantial evidence from which I can conclude that the damage[ ] [was] caused by [W.C.M.]. In other words, the State has at least made out a prima facie case as to that.”
(R. 86.)
T.G. testified on W.C.M.’s behalf. He said H.R. was yelling at W.C.M. when H.R. told him to get out of the car. (R. 100.) T.G. did not see W.C.M. jump on the car, only lean on it, but that may have been because of where he was sitting in the Mule. (R. 101.)
W.C.M. testified he got in H.R.’s car because he did not know how long his friends would be gone on the Mule. (R. 114.) He testified that he left the area as soon as the Mule was out of sight. (R. 115.) W.C.M. said that, when H.R. told him to get out of the car, he was not mean about it. W.C.M. also denied being angry at being told to get out of H.R.’s car. (R. 115.) W.C.M. denied sitting on the hood of H.R.’s car and said he only leaned on the fender. He denied doing any damage to the car. He said that, after the other boys left on the Mule, he walked over to see Mr. Carroll, an elderly neighbor, but Mr. Carroll was in the shower so W.C.M. went home. A few minutes later he got a telephone call to come back to H.R.’s car. (R. 115.) H.R. started “cursing [W.C.M.] like a dog” about the damage. (R. 117.) W.C.M. testified he did not notice whether there were any dents in the hood while he was leaning on it. W.C.M. also testified that his other friends “sit on the hood, too” and that some them had been doing so earlier that day. (R. 116,117.)
W.C.M. did not make a motion for a judgment of acquittal at the close of all the evidence. (R. 138.) However, he filed a posttrial motion seeking to have the judgment set aside on the ground that the evidence did not support a finding that he acted with criminal intent.

Analysis

On appeal, W.C.M. contends that the trial court erred in denying his motion for a judgment of acquittal because the State did not prove intent, an essential element *1283 of fírst-degree criminal mischief. We agree.
“The test used to determine the sufficiency of the evidence is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt.” Eady v. State, 495 So.2d 1161, 1164 (Ala.Crim.App.1986), citing Cumbo v. State, 368 So.2d 871, 875 (Ala.Crim.App.1978). “ ‘The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the [finder of fact], at the time the motion was made, from which the [finder of fact] by fair inference could have found the appellant guilty.’ ” Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993), quoting Thomas v. State, 363 So.2d 1020 (Ala.Crim.App.1978).
“The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the [trier of fact].” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985).
Criminal mischief, in the first degree, is defined, in relevant part, as follows:
“(a) A person commits the crime of criminal mischief in the first degree if, with intent to damage property, and having no right to do so or any reasonable ground to believe that he or she has such a right, he or she inflicts damages to property:
(1) In an amount exceeding two thousand five hundred dollars ($2,500).... ”
§ 13A-7-21, Ala.Code 1975 (emphasis added).
W.C.M. argues on appeal that there was no showing that he intended to damage H.R.’s car. Specifically, he argues that all the witnesses testified that there was no animosity between him and H.R., and that any damage he caused to the hood was accidental.
“Normally there is no direct evidence of intent. ‘ “ ‘Intent, we know, being a state or condition of the mind, is rarely, if ever susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.’ ” ’ ” Brown v. State, 11 So.3d 866, 914 (Ala.Crim.App.2007), quoting Ex parte C.G., 841 So.2d 292, 301 (Ala.2002), quoting, in turn, Pumphrey v. State, 156 Ala. 103,106, 47 So. 156, 157 (1908).
Intent is clearly a question for the finder of fact. The question before the juvenile court was whether W.C.M. intended to damage H.R.’s car. The State’s witnesses testified that they believed W.C.M. had no intent to damage the car.
In Nguyen v. State, 580 So.2d 122 (Ala.Crim.App.1991), a circumstantial-evidence case, this Court held that evidence showing a possibility that the appellant had committed the offense was not sufficient because “ ‘the possibility that a thing may occur is not alone evidence even circumstantially, that the thing did occur.’ ” 580 So.2d at 123, quoting Parker v. State, 280 Ala. 685, 691, 198 So.2d 261, 268 (1967). As the Alabama Supreme Court in Parker further stated:
*1284 “The only inference raised by the state’s evidence presented in this case is that it was possible that this appellant may have committed this offense. Beyond this possibility, resort must be had to surmise, speculation, and suspicion to establish the appellant’s criminal agency in the offense charged. No rule is more fundamental or better settled than that convictions cannot be predicated on such bases....
“If the evidence in a criminal case raises a mere suspicion, or, admitting all it tends to prove, a defendant’s guilt is left in uncertainty, or dependent upon conjecture or probability, the court should instruct the jury to acquit, for such evidence does not overcome, prima facie, the presumption of innocence with which every accused is charitably clothed under our system of jurisprudence.”
Parker v. State, 280 Ala. at 691, 198 So.2d at 268.
The State’s own witnesses testified that W.C.M. did not have the intent to damage the vehicle when he “flopped” on the hood. They further testified that there had been no argument or hard feelings among the boys that might have provided a motive for W.C.M. to deliberately cause damage to the vehicle. Moreover, in denying the motion for a judgment of acquittal, the court did not find that the State had established the element of intent; rather, the court stated only that it found that W.C.M. had caused the damage. Causing the damage was only one portion of the prima facie case. In order to prove a prima facie case, the State also had to prove that W.C.M. acted with the intent to cause damage to the property. Not only did the State fail to present any evidence indicating that W.C.M. had any intent to damage the property, the State presented significant evidence to the contrary. There being no prima facie case, the trial court should have granted W.C.M.’s motion for a judgment of acquittal.
We find support for our position in Ex parte G.G., 601 So.2d 890 (Ala.1992). In that case, the Alabama Supreme Court considered a criminal-mischief case in which a juvenile was adjudicated delinquent based on his alleged presence while others vandalized a lounge in a hotel. This Court had affirmed the juvenile court’s denial of G.G.’s motion for a judgment of acquittal, and the Alabama Supreme Court reversed. The Alabama Supreme Court held that the juvenile court had erred by not granting G.G.’s motion for a judgment of acquittal because the State had failed to prove that G.G. had damaged hotel property or that he acted with the intent to damage the hotel property.
“The State’s evidence that G.G. might have been involved in the vandalism was circumstantial, and we conclude that the State’s evidence was not sufficient to prove beyond a reasonable doubt the elements of the charge against G.G. ‘[Cjircumstantial evidence justifies a conviction only when it is inconsistent with any reasonable theory of innocence.’ Cumbo v. State, 368 So.2d 871, 875 (Ala.Crim.App.1978).
“Here, the State proved only that G.G. dropped some candy wrappers on the floor of the lounge. Admittedly, the dropping of the wrappers on the floor of the lounge did not cause any damage. Although G.G. admitted being in the lounge at one time, the State submitted no evidence that G.G. was in the lounge at the time of the vandalism.
“Based on the foregoing, we hold that the trial court erred by not granting G.G.’s motion for a judgment of acquittal made after the close of the State’s case. The Court of Criminal Appeals’ judgment affirming the adjudication of delinquency is, therefore, reversed, and the *1285 cause is remanded with instructions for that court to reverse the judgment of the trial court and to enter a judgment for the juvenile.”
Ex parte G.G., 601 So.2d at 893.
As did the Alabama Supreme Court in Ex parte G.G., we are compelled to hold that the juvenile court erred when it denied W.C.Mfs motion for a judgment of acquittal. Although the State presented evidence that W.C.M. damaged H.R.’s vehicle when he “flopped” onto it, it failed to present any evidence to indicate that W.C.M. acted with the intent to damage the vehicle when he did so. Instead, all the evidence it presented indicated that W.C.M. did not act with the intent to damage the vehicle. Thus, the State’s evidence was not sufficient to prove beyond a reasonable doubt the elements of criminal mischief against W.C.M.
Because the State failed to prove the element of intent, the juvenile court erred when it denied W.C.M.’s motion for a judgment of acquittal. We reverse the judgment of the juvenile court and render a judgment in favor of W.C.M.
REVERSED AND JUDGMENT RENDERED.
KELLUM, BURKE, and JOINER, JJ., concur. WINDOM, P.J., dissents, without opinion.

. Two brothers with the same initials, J.A., testified. For the sake of clarity, the brothers will be designated "J.A.1" and "J.A.2.”